A04A2112. WIGGINS v. THE STATE.
(612 SE2d 598)

BARNES, Judge.

Following the denial of his motion for new trial, Paul Wiggins, Jr., appeals his convictions for cruelty to children, false writings and statements, and violation of oath of office.[1] On appeal, Wiggins contends, among other things, that the evidence was insufficient to sustain his cruelty to children conviction and that the trial court erred in not dismissing his indictment and in denying his special demurrer and motion to dismiss the violation of oath of office charge. For the reasons that follow we affirm Wiggins' convictions, but reverse the portion of the sentence imposing restitution, and remand for a hearing pursuant to OCGA § 17-14-10.

On appeal from a criminal conviction, Wiggins no longer enjoys a presumption of innocence, and the appellate court views the evidence in the light most favorable to the verdict. *Pettus v. State*, 237 Ga. App. 143 (1) (514 SE2d 901) (1999). We do not weigh the evidence or determine witness credibility. *Morgan v. State*, 255 Ga. App. 58 (1) (564 SE2d 467) (2002). As long as there is some competent evidence, even though contradicted, to support each fact necessary for the State's case, the jury's verdict will be upheld. Id.; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] Wiggins was found not guilty of rape, sodomy, false imprisonment, and sexual battery.

So viewed, the evidence demonstrates that Wiggins was an officer with the Rome Police Department. On July 29, 2003, at approximately 2:00 a.m., a patrol officer was dispatched to the Holiday Inn Skytop because of possible underage drinking. When the officer arrived he found six people including the 16-year-old victim in a hotel room. The officer discovered suspected crystal methamphetamine on two of the occupants and later arrested them. Wiggins and another officer arrived as backup, and Wiggins told the first officer that he knew the victim and had talked with her father and "he is pissed off . . . if you agree to let her go, I told her it's all up to you, and you know, I know her, I know her daddy, and I know her daddy will wear that ass out because she didn't need to be in this environment." The patrol officer testified that he told Wiggins to put the victim in his patrol car.

The victim testified that Wiggins "used to be her step-uncle" because he had been married to her stepmother's sister. The first officer turned the victim over to Wiggins, and Wiggins told her that she had two choices, "I either can call your dad or take you home." The victim said that she did not do anything, and Wiggins responded, "Well, what can you do for me?" The victim asked if she could do community service, but Wiggins laughed and repeated the question. She asked him what he meant and Wiggins asked the victim to meet him at a convenience store down the street. Wiggins told the victim that if she did not meet him, she and her friends would go to jail, and that he would tell her father. He also retained the victim's driver's license, and she agreed to meet him.

After the victim and Wiggins drove separately to the convenience store, she got in the back seat of the patrol car and Wiggins drove to a nearby park so that "nobody can see [them]." Wiggins told the victim to get on the hood of the patrol car and take her clothes off. He sucked her breasts, and pulled out his penis and told her to touch it and "suck it." After Wiggins and the victim had sex on the hood of the car, he ejaculated in his hand. The victim testified that "it hurt" when they were having sex, and afterward Wiggins took her back to her car and warned her again what would happen if she told anyone.

The victim drove to the home of some friends who had been at the hotel. She was extremely upset when she arrived, and one of the friends testified that the victim was "crying, shaking, and very upset." She told them that she had been raped and described her encounter with Wiggins. Over the victim's protest, one friend called 911 and reported the rape. The victim then went to a local hospital where she submitted to a sexual assault exam, and detectives took photographs of bruises on her legs. Wiggins denied that the encounter had occurred and asked his best friend, another police officer, to say

that they were together during that time. Throughout the investigation, Wiggins continued to deny having sex with the victim, but a Georgia Bureau of Investigation (GBI) crime lab report positively identified the DNA obtained from vaginal swabs collected from the victim as belonging to Wiggins or his identical twin. At the trial Wiggins maintained that the sexual encounter was consensual.

1. Wiggins asserts that the evidence is insufficient to sustain the verdict for cruelty to children because given the victim's willingness and the voluntariness of the meeting, no rational trier of fact could have found that he acted maliciously.

By definition, "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b).

> The mental state of a defendant required to be established to prove cruelty to children is the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result. The defendant's intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Therefore, the determination of the defendant's intention is peculiarly a question for the jury.

(Punctuation and footnotes omitted.) *Ferguson v. State*, 267 Ga. App. 374, 376 (1) (599 SE2d 335) (2004).

Based on the evidence that Wiggins repeatedly threatened the victim with prosecution if she did not cooperate with him, the victim's testimony that the act was painful and that she was upset and crying afterward, and the complete lack of justification for Wiggins' actions, the jury was authorized to conclude that Wiggins' actions were malicious. We conclude that the evidence was sufficient to enable a rational trier of fact to find Wiggins guilty of cruelty to children beyond a reasonable doubt.

2. Wiggins argues that the trial court committed reversible error when it denied his motion to dismiss the indictment because the indictment was not filed with proper notice pursuant to OCGA § 17-7-52. Wiggins contends that the trial court erred in denying his motion to dismiss the indictments alleging false writings and statements and violation of oath of office because he was not afforded his

rights of notice and the opportunity to appear before the grand jury pursuant to OCGA §§ 45-11-4 and 17-7-52.

OCGA § 17-7-52 provides:

> (a) Before an indictment against a . . . peace officer charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties is returned by a grand jury, the officer shall be notified of the contemplated action by the district attorney of the county wherein the grand jury shall convene and the officer shall be afforded the rights provided in Code Section 45-11-4.
>
> (b) The requirements of subsection (a) of this Code section shall apply to all prosecutions, whether for misdemeanors or felonies, and no such prosecution shall proceed either in state or superior court without a grand jury indictment.

OCGA § 45-11-4 affords the officer notice of the indictment at least 15 days before the indictment is presented to the grand jury, the right to appear before the grand jury and to make a statement without being subject to cross-examination, and the right to be present with counsel during the presentation of all evidence. OCGA § 45-11-4 (f), (g).

> These rights have been found to apply where prison officers were charged with involuntary manslaughter for confining a prisoner under conditions which caused his death by heat prostration, and where a police officer on duty was charged with speeding and failing to reduce his speed when approaching an intersection. However, these rights have been found not to apply to situations where officers have stepped aside from the performance of their official duties in order to commit crimes. For instance, we have held that officers charged with committing burglary, armed robbery and aggravated assault while on duty are not entitled to these rights inasmuch as the performance of their official duties does not include the commission of such crimes. Likewise, this court has held that the performance of official duties does not include rape.

(Footnotes omitted.) *State v. Galloway*, 270 Ga. App. 184, 185 (606 SE2d 273) (2004).

The contested indictments accused Wiggins of false writings and statements in that he did "provide a false written statement of events regarding his conduct during the course of a criminal investigation and did falsify records on his daily activity sheet," and that he

violated his oath of public office by "threatening to arrest [the victim] if she did not meet with him at a separate location and comply with his demands for sex, by lying to officials with the GBI during a criminal investigation, and by committing crimes against the State while on duty."

Wiggins argues that the crimes charged occurred while he was in the performance of his duties as a police officer and therefore he is afforded the protections of OCGA § 17-7-52. We do not agree.

While certainly the act of filling out a daily activity sheet is within the scope of his duties, the falsifying of the sheet to cover up alleged crimes is not within the scope of his duties; likewise false statements given to cover up alleged crimes are also outside of the performance of his duties. The issue is not whether the activity is characterized as an official duty, but whether the performance of such activity is legitimate. Wiggins' actions clearly were not, and thus the trial court did not err in denying his motion to dismiss the indictment.

3. Wiggins next contends that the trial court committed reversible error in denying his special demurrer and motion to dismiss Count 6 of the indictment. He argues that the indictment was not perfect in form and insufficient to apprise him of how to defend against the charge. He contends that the language in the indictment charging that he had committed "crimes against the State" was vague and uncertain. Wiggins asserts that the language left him uncertain as to "what 'crime' against the 'State of Georgia' has been committed which would amount to a violation of [his] oath of office."

Count 6 of the indictment in pertinent part accused Wiggins of "threatening to arrest [the victim] if she did not meet with him at a separate location and comply with his demands for sex, by lying to officials with the GBI during a criminal investigation, and by committing crimes against the State while on duty."

With respect to special demurrers,

[t]he true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Citations, punctuation and emphasis omitted.) *Snider v. State*, 238 Ga. App. 55, 58 (2) (516 SE2d 569) (1999).

Pursuant to OCGA § 16-10-1, "[a]ny public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."

Although Wiggins argues that the indictment was vague and uncertain as to what the "crimes against the State" were, we find that indictment, which accused Wiggins of "threatening to arrest [the victim] if she did not meet with him at a separate location and comply with his demands for sex, by lying to officials with the GBI during a criminal investigation, and by committing crimes against the State while on duty," was sufficient under the test outlined in *Snider*.

4. Wiggins argues that his conviction for cruelty to children is inconsistent with his acquittals on the charge of rape, false imprisonment, and sexual battery.

Georgia does not recognize an inconsistent verdict rule, which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts. Therefore, [Wiggins'] enumeration is without merit.

(Footnotes omitted.) *Hines v. State*, 276 Ga. 491, 492 (2) (578 SE2d 868) (2003).

5. Wiggins next argues that the trial court committed reversible error and violated his due process rights by improperly charging the jury on the entire Code section of cruelty to children and in failing to give a proper limiting instruction in its recharge.

In its charge, the trial court first read each count of the indictment, including the cruelty to children count as follows:

The grand jurors aforesaid in the name and behalf of the citizens of Georgia further charge and accuse Paul Wiggins with the offense of cruelty to children (OCGA § 16-5-70) for that the said accused on the 29th day of July, 2003, in the county aforesaid, did unlawfully then and there maliciously cause [the victim], a child under the age of eighteen, cruel and excessive mental pain by raping said child, by threatening her with arrest and jail if she did not go with him to a

remote location, by requiring her to touch his penis and requiring her to permit him to touch her breast, contrary to the laws of this State, the good order, peace and dignity thereof.

Later the trial court read OCGA § 16-5-70, the cruelty to children Code section, and detailed that:

Cruelty to children is defined as a parent, guardian, or other person supervising the welfare of or having immediate charge of the custody of a child under the age of eighteen commits the offense of cruelty to children in the first degree when such person willfully deprives the child of necessary sustenance to the extent that the child's health or well-being is jeopardized. Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of eighteen cruel or excessive pain — excuse me — cruel or excessive physical or mental pain.

Wiggins excepted to several charges including the one on cruelty to children, complaining that "the Court read the Code section including the first part that cruelty to children can occur when a child is deprived of sustenance, and I take exception with that since that's not part of the indictment charge." When the trial court offered to re-charge the exceptions, Wiggins initially rejected the offer and requested a mistrial, but later requested that the trial court re-charge certain offenses including cruelty to children. After reviewing the language of the proposed recharged offenses, Wiggins again noted his exceptions.

The trial court called the jury in and explained that

there is some question that I may have mislead [sic] y'all in the — the elements of the crime on certain parts, so I'm going to recharge four things to you. . . . Any person commits the offense of cruelty to children when the person maliciously causes a child under the age of eighteen years cruel or excessive physical or mental pain. Malice is not ill will or hatred. For the purpose of this Code section, the [term] malice means an actual intent to cause the particular harm produced, that is, physical pain or mental pain without justification or excuse. Malice is also wanton and willful doing of an act with an awareness of a plain and strong likelihood that such particular harm may result. Intention may be shown by the circumstances connected to the offense.

After the recharge, Wiggins stated that he had no further exceptions. Shortly before recessing for the day, the jury sent in a note requesting, among other things, a "definition of each charge as read." When the jury reconvened the next day, the foreperson told the trial court that the jury had "some questions about the rereading, . . . the one we were mainly concerned about was the rape charge . . . we just want the legality of it, the — the law." The foreperson then asked for a written definition of rape and cruelty to children, which was provided to the jury with Wiggins' approval.

Wiggins contends that the trial court erred by not giving a limiting instruction to adequately inform the jury as to "the charge upon which the Court 'may have misled' the jury." He also maintains charging the deprivation portion of the cruelty to children statute constituted a due process violation.

Wiggins relies on *Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995), as support for his due process argument that the charge as given misled the jury as it included language representing the crime of cruelty to children in a manner not set forth in the indictment. *Dukes* is based upon the due process principle that defendants are entitled to notice "of the charges brought against them. This notice enables them to present their defense without surprise and to protect them against a second prosecution for the same offense." Id. at 422-423.

Here, the indictment charged Wiggins only with the "maliciously causes pain" element of OCGA § 16-5-70, and Wiggins was on notice that he needed to defend only against proof as to that method. The trial court's charge did not require him to defend against a cause of cruelty to children that was not alleged in the indictment.

Likewise we find no merit in Wiggins' contention that the trial court committed reversible error by failing to "call the jury's attention to which charge was the incorrect charge," and then give a limiting instruction as to the erroneous charge.

Jury instructions must be read and considered as a whole. *Bryant v. State*, 249 Ga. App. 383, 384 (1) (547 SE2d 721) (2001). When an entire statutory definition is given, we will not find error if the instructions sufficiently limit the jury's consideration to the elements of the offense as charged in the indictment. *Roberson v. State*, 241 Ga. App. 226, 230 (2) (526 SE2d 428) (1999).

Here, although the trial court recited the entire statutory definition of cruelty to children, the court also instructed the jury that Wiggins had been indicted for cruelty to children by "raping said [victim], by threatening her with arrest and jail if she did not go with him to a remote location, by requiring her to touch his penis and requiring her to permit him to touch her breast." And the indictment

went out with the jury to aid it in deliberations. Under the circumstances of this case, there is no reasonable possibility that the jury was misled and confused and thus convicted Wiggins of cruelty to children in a manner not alleged in the indictment.

6. Wiggins next asserts, and the State concedes, that the trial court committed error by imposing a sentence of restitution upon him where there was no evidence of expenses or costs to the complaining victim for damages resulting from the alleged crimes.

Before ordering restitution, a trial court must hold a hearing to determine whether restitution is appropriate and, if so, the amount that should be paid. See *Nobles v. State*, 253 Ga. App. 814 (560 SE2d 724) (2002). OCGA § 17-14-10 requires that the trial court consider several factors in making this determination, including the offender's present financial status, the offender's probable future earning capacity, the goals of the restitution order, and the amount of damages suffered by the victim. Following the restitution hearing, "the court must make written findings of fact relating to each of the factors set forth in OCGA § 17-14-10." (Punctuation omitted.) *Nobles v. State*, supra, 253 Ga. App. at 814-815. Failure to make such written findings renders the restitution order deficient. See id. at 815.

Accordingly, because OCGA § 17-14-10 requires that a trial court hold a hearing and make certain factual findings *before ordering restitution*, see *Nobles v. State*, supra, 253 Ga. App. at 814; *Brown v. State*, 214 Ga. App. 733, 737 (5) (449 SE2d 136) (1994), the portion of the sentence imposing restitution is vacated and remanded for a hearing in compliance with OCGA § 17-14-10.

7. Wiggins next argues that the trial court committed reversible error by requiring him to register as a sex offender even though he was acquitted of rape, sexual battery, and sodomy.

Under that Code section, a person who is convicted of, among other things, certain "criminal offense[s] against a victim who is a minor" shall register as prescribed therein. OCGA § 42-1-12 (b) (1) (A) (i). "Criminal offense against a victim who is a minor" with respect to convictions occurring after June 30, 2001, includes "[a]ny conduct which, by its nature, is a sexual offense against a minor." OCGA § 42-1-12 (a) (4) (B) (xi).

In Wiggins' case, the cruelty to a child as stated in the indictment was the rape, the threat to arrest and jail the victim, and the force used to make her touch his penis. The evidence in this case authorized the trial court to determine that Wiggins' act of cruelty to a child fell within the purview of OCGA § 42-1-12.

8. In his last enumeration of error, Wiggins challenges the constitutionality of OCGA § 42-1-12 "as it imposes a sentence beyond the statutory sentences for those crimes of which the defendant was

convicted without a jury determination that the defendant committed a 'criminal offense against a victim who is a minor' as that classification is defined in the sex offender registration statute."

> Except in limited situations, not here pertinent, the Supreme Court has exclusive jurisdiction of constitutional construction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). In this instance, the record does not . . . reveal that [Wiggins] elicited any ruling on this issue. Since there is no ruling on the constitutionality of [the] statute, the issue is not properly presented for appellate review in this case as it was not explicitly argued and ruled on below.

(Citations and punctuation omitted.) *Harris v. State*, 230 Ga. App. 842, 842-843 (497 SE2d 810) (1998).

*Judgment affirmed in part, vacated in part and remanded for hearing on issue of restitution. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 23, 2005 —

*Hine & Twyman, Christopher P. Twyman*, for appellant.
*Leigh E. Patterson, District Attorney*, for appellee.