A06A0646. GORE v. THE STATE.
A06A0647. WALTON v. THE STATE.
(627 SE2d 198)

BLACKBURN, Presiding Judge.

Following a jury trial, Billy Joe Gore and his live-in girlfriend Chianti Walton were both convicted of child cruelty arising out of their failing (for over a week) to seek medical treatment for Walton's 15-month-old daughter who was suffering from second and third degree burns caused by scalding water. In Case No. A06A0646, Gore appeals, challenging the sufficiency of the evidence and claiming ineffective assistance of counsel. In Case No. A06A0647, Walton appeals, also challenging the sufficiency of the evidence and further claiming that the trial court erred in its jury instruction on malice and in its denial of her motion for mistrial. For the reasons set forth below, we affirm in both cases.

When reviewing defendants' challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendants no longer enjoy the presumption of innocence. *Short v. State.*[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendants guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[2]

So viewed, the evidence shows that on the afternoon of October 6, 2002, Gore (who lived with Walton) was caring for Walton's two daughters while she was at work. He placed the girls (a fifteen-month-old and a three-year-old) in a tub of warm water and went outside to speak with a friend. The three-year-old came outside and informed Gore that the fifteen-month-old had turned on the hot water and was crying. He returned to the bathroom and found the 15-month-old severely burned. He took the injured child to Walton's nearby work-place, and Walton told him that she feared if medical treatment were sought, the Department of Family and Children Services ("DFACS") would take the children. Gore also took the child to Gore's own mother, who instructed him to seek immediate medical treatment. Though aware the child's injuries needed immediate medical attention and could not be adequately treated at home, Gore and Walton decided to conceal the injuries from DFACS and relatives by not seeking medical treatment and by instead simply purchasing and applying some items from a local pharmacy.

Late on the evening of October 13, Walton, acquiescing to the demands of a relative who insisted on seeing the injured daughter,

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

left the girl with the relative. Picking up the crying child who was obviously in pain, the relative immediately discerned the severe burns on the lower portions of the child's body and tried to remove the child's shirt and diaper, both of which were stuck to the child's burned skin (no gauze bandages were present). She rushed the child to the local emergency room, where the treating physician diagnosed second and third degree burns on the child's back, buttocks, and left leg and foot, some of which wounds had become infected. The physician immediately administered a narcotic pain killer and antibiotics and cleansed, treated, and dressed the wounds. The child remained in the hospital for four days and later received physical therapy.

Gore and Walton were charged with cruelty to children in that they maliciously caused the child excessive physical pain by failing to get her appropriate medical care. Gore was also charged with a second count of cruelty to children, which accused him of maliciously burning the girl with hot water. A jury found them both guilty on the failure to obtain medical care count but acquitted Gore on the burning count. Following the denial of their separate motions for new trial, Gore appeals in Case No. A06A0646, and Walton appeals in Case No. A06A0647.

## Case No. A06A0646

1. Gore first challenges the sufficiency of the evidence, arguing that no evidence showed that he acted maliciously. Specifically, he claims that since he took the child immediately to her mother and was only complying with the mother's desire not to seek medical care for the child (so as to avoid any repercussions from DFACS), no finding of malice was possible. We disagree.

OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." The malice element of this statute

> imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such . harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

(Punctuation omitted.) *Brewton v. State.*[3] This is a classic question for the jury, whose finding of malice will not be set aside if supported by any evidence. See *McGahee v. State.*[4]

Here, Gore lived with the child's mother and cared for the child when the mother was working. Gore told police that despite his and Walton's understanding that the child required immediate medical attention from a physician, and despite the advice received from Gore's own mother to that same effect, he and Walton jointly "decided to ignore the immediate medical attention the child needed, and they tried to hide the injury from DFACS and other relatives." Thus, the evidence showed that Gore was not simply an outsider who was acceding to instructions from the mother; rather, he was a regular caretaker of the child who with the child's mother jointly decided to ignore the child's need for medical attention out of the selfish desire to avoid possible repercussions from governmental authorities.[5] Such evidence supported a finding of malice. See *Glenn v. State*[6] ("[m]alice, as an element of the crime of cruelty to children, can be shown by intentionally and unjustifiably delaying necessary medical attention for a child, as that delay may cause the child to suffer from cruel and excessive physical pain"); *Hoang v. State*[7] (caretaker's failure to seek immediate medical attention for child not excused by parents' instructions that they should be contacted first); *Wolf v. State*[8] (fear of DFACS did not justify failure to seek medical care for severely burned child); *Hill v. State*[9] ("[b]eing afraid because one might get in trouble is neither justification nor excuse for refusing to obtain medical care for one's injured child," who was severely burned by hot water).

2. Gore contends that the trial court erred in failing to grant his motion for new trial on the ground of ineffective assistance of counsel. Specifically, although he does not contest the introduction of his first two prior felony convictions during the sentencing hearing, Gore claims that his counsel erred in failing to object to the introduction of his third prior conviction. He argues that since the certified copies of that conviction did not contain any writing signed by him pleading guilty to that crime, the evidence was inadmissible to show that

---

[3] *Brewton v. State*, 266 Ga. 160, 161 (2) (465 SE2d 668) (1996).

[4] *McGahee v. State*, 170 Ga. App. 227 (1) (316 SE2d 832) (1984).

[5] Moreover, even if the decision to withhold needed medical treatment was solely that of Walton, evidence showed that Gore was a party to this crime by aiding and abetting her in this decision. See OCGA § 16-2-20 (b) (3).

[6] *Glenn v. State*, 278 Ga. 291, 293 (1) (a) (602 SE2d 577) (2004).

[7] *Hoang v. State*, 250 Ga. App. 403, 407-408 (1) (551 SE2d 813) (2001).

[8] *Wolf v. State*, 246 Ga. App. 616, 617-618 (1) (540 SE2d 707) (2000).

[9] *Hill v. State*, 243 Ga. App. 614, 616 (533 SE2d 779) (2000).

conviction. Had that third conviction not been proven in the sentencing hearing, Gore contends that he would not have been subject to the rule of OCGA § 17-10-7 (c) requiring that a fourth-time felony offender not be eligible for parole.

At the hearing on the motion for new trial, Gore's burden was clear.

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous.

(Citations omitted.) *Domingues v. State.*[10]

Because any objection to the admission of the certified sentence would have been futile, Gore is unable to show the first prong. Gore cites no authority, and we are aware of none, that requires a writing reflecting a defendant's signature on a guilty plea to accompany a certified copy of the indictment and sentence (which reflect that conviction and defendant's representation by counsel) before that certified copy may be admissible to prove the conviction. To the contrary, *Morrison v. State*[11] noted that a "certified copy of sentence showing that defendant pled guilty and was represented by counsel was sufficient to support conviction." See *Hudson v. State*[12] (State properly proved prior conviction by submitting certified copies of conviction and sentence). Indeed, *Berryhill v. State*[13] rejected defendant's argument that his signature was required on the convictions before certified copies thereof were admissible. Because any objection to the third conviction on this ground would have been futile, the failure to so object provides no basis for a claim of ineffective assistance of counsel. See *Kidd v. State*[14] ("it is well settled that an

---

[10] *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

[11] *Morrison v. State*, 272 Ga. App. 34, 44, n. 25 (611 SE2d 720) (2005), citing *Ingram v. State*, 240 Ga. App. 172, 173 (2) (523 SE2d 31) (1999).

[12] *Hudson v. State*, 175 Ga. App. 878, 880 (2) (334 SE2d 735) (1985).

[13] *Berryhill v. State*, 249 Ga. 442, 451 (11) (291 SE2d 685) (1982), abrogated on other grounds, *Jones v. State*, 261 Ga. 665, 666 (2) (409 SE2d 642) (1991).

[14] *Kidd v. State*, 277 Ga. App. 29, 34 (3) (625 SE2d 440) (2005).

attorney's failure to assert a futile objection provides no basis for a claim of ineffective assistance of counsel").

### Case No. A06A0647

3. Walton argues that the trial court erred in denying her motion for mistrial, in which she urged that the State's failure to comply with its discovery obligations unduly prejudiced her defense. Specifically, she objected to the trial testimony of an officer, who called Walton from the emergency room of the hospital to ask her to come to the hospital to be with her injured child. The officer testified that Walton responded she did not want to come to the hospital, explaining, "If I come up there, I know DFACS and I know I'm going to be arrested." Walton maintains that the State breached its obligation to disclose this oral statement in pre-trial discovery, precluding her from adequately preparing her defense.

OCGA § 17-16-6 addresses the possible remedies where a party in a criminal action fails to comply with its discovery obligations. The trial court's ruling on the appropriate remedy, including a denial of a motion for mistrial, is generally subject to review for an abuse of discretion. *Tubbs v. State*.[15]

We discern no abuse of discretion here for two reasons. First, as found by the trial court, Walton failed to show that the State breached its discovery obligation. OCGA § 17-16-4 requires the prosecuting attorney to "disclose to the defendant the substance of any other relevant oral statement made by the defendant, before or after arrest, in response to interrogation by any person then known by the defendant to be a law enforcement officer . . . if the state intends to use that statement at trial." As set forth above, the oral statement made by Walton here was not in response to interrogation by a police officer, but was in response to a request by the officer at the hospital that Walton come to the hospital to be with her severely injured child. Such a natural request to the mother of an injured child would not appear to constitute questioning that the officer should have known was reasonably likely to elicit an incriminating response from the mother. Cf. *Al-Amin v. State*[16] (defining interrogation for *Miranda* purposes as questioning that police should know is reasonably likely to elicit an incriminating response from the suspect). As evidence supported the trial court's finding in this regard, we discern no abuse of discretion in denying the motion for mistrial.

---

[15] *Tubbs v. State*, 276 Ga. 751, 753-754 (3) (583 SE2d 853) (2003).
[16] *Al-Amin v. State*, 278 Ga. 74, 88 (18) (a) (597 SE2d 332) (2004).

Second, even if the State had breached its discovery obligation, OCGA § 17-16-6 authorizes a mistrial only if the defendant shows prejudice and bad faith. Here, ample evidence supported the court's finding of no prejudice. The officer had testified in a pre-trial hearing that after the mother arrived at the hospital, he *Mirandized* her and then questioned her in a separate room, where he asked her why she did not seek medical treatment for the child. She responded that although she knew the child needed medical attention, she had had problems with DFACS in the past and was afraid not only that she would be in trouble with DFACS if she showed up at the hospital with a burned child, but that DFACS would also take her children away from her. Thus, Walton was already aware of the officer's testimony that at the hospital she expressed fear about getting in trouble with DFACS; the statement that she also expressed this to the officer during the phone conversation before coming to the hospital would hardly amount to a great surprise that would so prejudice her defense that a mistrial would be required as a matter of law. We discern no abuse of discretion in this regard either.

4. Walton contends that the trial court erred in denying her motion for a directed verdict. Specifically, she claims that no evidence showed that she caused her child excessive physical pain by failing to seek medical treatment. She focuses on the lack of any medical testimony specifying that had treatment been sought earlier, the child's pain would have been less.

> The standard of review for denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. Thus, we construe the evidence in favor of the jury's verdicts and determine whether a rational trier of fact could have found [Walton] guilty beyond a reasonable doubt of the crimes of which [she] was convicted.

(Footnote omitted.) *Hardeman v. State.*[17]

So construed, ample evidence showed that Walton's failure to seek medical treatment for her child caused that child excessive physical pain. First, the child's relative who took her to the hospital testified that the child's diaper and shirt stuck to her skin because they were not properly bandaged with gauze, and that the child was in severe pain. Second, the emergency room physician and another physician testified as to the child's great pain arising from her untreated second and third degree burns on her back, buttocks, and

---

[17] *Hardeman v. State,* 277 Ga. App. 180, 182 (1) (a) (626 SE2d 138) (2006).

left leg and foot. See *Folson v. State*[18] (evidence of the extent of a child's injuries allows a jury to infer excessive physical pain). The emergency room physician immediately administered a strong narcotic to relieve this pain. Third, the emergency room physician noted that the untreated wounds were infected and required antibiotics. This evidence sufficed to show Walton caused the child excessive physical pain. See *Wolf*, supra at 617 (1) (jury allowed to infer excessive physical pain from failure to seek treatment for severe burns that became infected); *Hill*, supra at 616-617 (jury allowed to infer excessive pain from delaying treatment for child who was severely burned by hot water).

Accordingly, the court did not err in denying Walton's motion for directed verdict.

5. Walton's final enumeration is that the court erred in its jury instruction on malice. Specifically, Walton claims that in addition to instructing the jury that malice means an actual intent to cause the particular harm produced without justification or excuse, the court instructed the jury that malice may be the "wanton and willful doing of an act with an awareness of a plain and strong likelihood that such particular harm may result." See *Jones v. State*.[19] Because Walton was only charged with failing to do something (i.e., failing to obtain needed medical treatment) and not with doing something (i.e., burning the child with hot water), Walton argues that the malice definition given by the court allowed the jury to convict her of child cruelty by a method not charged in the indictment. See *Dukes v. State*[20] (jury instructions may not mislead jury into convicting defendant of crime in way other than that charged in the indictment).

The flaw in Walton's argument is that Gore was charged with doing an act (i.e., burning the child with hot water) and therefore the definition of malice applied directly to that second count against Gore. Indeed, Gore's closing argument focused on this definition as applicable to him in this second count and as not applicable to the other count. Moreover, after reading the indictments to the jury (which were later sent out with the jury for review during deliberations), the court carefully instructed the jury that no defendant "shall be convicted of any crime unless and until each element of each crime *as charged* is proved beyond a reasonable doubt. The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged by reasonable doubt." (Emphasis supplied.) The court reiterated later that only if

---

[18] *Folson v. State*, 278 Ga. 690, 691 (1) (606 SE2d 262) (2004).

[19] *Jones v. State*, 263 Ga. 835, 839 (2) (439 SE2d 645) (1994).

[20] *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556) (1995).

the jury found that Walton committed the offense of cruelty to children "as alleged in count two of the indictment," could the jury find her guilty. We discern no reasonable possibility that the jury was misled and convicted Walton of cruelty to children in a manner not alleged in the indictment. See *Wiggins v. State*[21] (reading of indictment plus giving indictment to jury to aid it in deliberations cures possible taint from overbroad jury instruction on child cruelty); *Green v. State*[22] (court's remedial instruction that State must prove every material allegation in the indictment plus court's giving indictment to jury for review during deliberation cured overbroad jury instruction); *Hendrix v. State*[23] (instruction confining elements of child cruelty to those material allegations in the indictment cured overbroad jury instruction).

*Judgments affirmed. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 15, 2006.

*William J. Mason*, for appellant (case no. A06A0646).
*John R. Mobley II*, for appellant (case no. A06A0647).
*J. Gray Conger, District Attorney, Ragen D. Marsh, Assistant District Attorney*, for appellee.

---

[21] *Wiggins v. State*, 272 Ga. App. 414, 421-422 (5) (612 SE2d 598) (2005).
[22] *Green v. State*, 240 Ga. App. 377, 379-380 (4) (523 SE2d 581) (1999).
[23] *Hendrix v. State*, 230 Ga. App. 604, 606 (2) (497 SE2d 236) (1997).