*C. Jason Perkins*, amicus curiae.

## A11A0559. WELLS v. THE STATE.
### (710 SE2d 860)

MILLER, Presiding Judge.

Following a jury trial, Saudi Wells was convicted of cruelty to children in the first degree (OCGA § 16-5-70 (b)); cruelty to children in the second degree (OCGA § 16-5-70 (c)); and aggravated battery (OCGA § 16-5-24 (a)). Wells filed a motion for new trial, which the trial court denied. On appeal, Wells challenges the sufficiency of the evidence to sustain his convictions. We conclude that the evidence was sufficient to establish Wells's guilt of the crimes, and therefore, we affirm.

On appeal, "[w]e view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility but only determine if the evidence is sufficient to sustain the convictions." (Citation and punctuation omitted.) *Hill v. State*, 243 Ga. App. 614 (533 SE2d 779) (2000). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the trial evidence shows that Wells and the mother of the male child victim, J. R., were dating. Wells served as J. R.'s caretaker and gave him baths on occasions when the mother was absent. Wells attempted to potty-train J. R., and would discipline J. R. when he soiled his diaper.

On the morning of July 16, 2006, the mother left J. R. alone with Wells at the residence while she ran an errand. Before departing, the mother asked Wells to give J. R. a bath while she was gone. Wells agreed.

When the mother returned to the residence, Wells was standing in the living room, "looking like something was happening," and J. R. was whining. The mother asked Wells what happened, and Wells stated that J. R. had fallen in the bathtub and had gotten hurt. The mother removed J. R.'s shirt and observed that his skin was burned and was "hanging" on the left side of his stomach and ear.

The mother testified that she wanted to take J. R. to the hospital, but Wells dissuaded her from doing so because he was afraid that he would go to jail. J. R. continued to whine throughout the night and would not eat or drink. The next day, the mother again expressed that she wanted to take J. R. to the hospital, but Wells told her that she could not do so because "he didn't want to get in trouble." The mother further testified that Wells took her cell phone to prevent her from calling for help. Although the mother attempted

to treat J. R. with over-the-counter medication, including a topical ointment, there was no improvement in J. R.'s condition during the course of the days that followed.

Two days after the incident, the mother took J. R. to her sister's residence, where they spent the night. J. R. experienced difficulty breathing and sleeping. On the next morning, the mother showed J. R.'s burns to her sister, who advised that J. R. be taken to the hospital for treatment. The mother transported J. R. to the hospital later that afternoon.

Upon arriving at the hospital's emergency room, J. R. received urgent care. The treating physician diagnosed J. R. as having second and third degree burns on the left side of his trunk and part of his back. The treating physician stated that J. R. also was dehydrated and had cellulitis, an infection that likely developed during the period of time that he did not receive appropriate medical treatment. As part of his treatment, J. R. received intravenous fluids, antibiotics, and skin grafts. J. R. remained in the hospital for approximately two weeks and continued to receive follow-up treatments thereafter. The treating physician further testified that J. R. had large hypertrophic scars across his left trunk, which itched and caused discomfort. J. R. had undergone several surgeries and corrective procedures for his severe burns, and the treating physician opined that he would likely receive more operations in the future.

Wells was arrested and indicted for two counts of cruelty to children and two counts of aggravated battery. Wells testified in his defense at trial, initially contending that J. R. had gotten into a tub of running water, but then stating that he did not know how J. R. had received the burns. He described that the mother had left J. R. alone inside the residence and when he returned inside the residence, he saw J. R. scrambling to get out of the bathtub.

The State presented the testimony of a medical expert, who opined that the location and distribution of J. R.'s burns were inconsistent with Wells's claim. The expert opined that instead, the burns were consistent with the left side of J. R.'s body being held into flowing hot water and the burns likely were not self-inflicted by the child.

Following the presentation of the evidence at trial, Wells was convicted of two counts of cruelty to children and one count of aggravated battery.[1]

1. Wells contends that his convictions were against the weight of

---

[1] The jury found Wells guilty of a lesser included offense of cruelty to children in the second degree (Count 1), cruelty to children in the first degree (Count 2), and two counts of aggravated battery (Counts 3 and 4). For purposes of sentencing, the trial court merged the aggravated battery charge of Count 3 into the aggravated battery charge of Count 4.

the evidence. On appeal, however, this Court does not weigh the evidence and does not judge the credibility of the witnesses. *Bay v. State*, 266 Ga. App. 91 (1) (596 SE2d 229) (2004). "Conflicts in the testimony of the witnesses, including the state's witnesses, are a matter of credibility for the jury to resolve." (Citations and punctuation omitted.) Id. We solely determine whether the evidence was sufficient to sustain the verdict. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld." (Punctuation and footnote omitted.) *Mahone v. State*, 293 Ga. App. 790, 791 (668 SE2d 303) (2008). Accordingly, Wells's arguments premised upon the weight and conflicts in the evidence are unavailing.

2. To the extent that Wells challenges the sufficiency of the evidence supporting his convictions, we address his contentions below under the proper standard set forth in *Jackson v. Virginia*, supra.

(a) *Cruelty to children in the first degree.* "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b).

> The malice element of this statute imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

(Punctuation and footnotes omitted.) *Gore v. State*, 277 Ga. App. 635, 636 (1) (627 SE2d 198) (2006). "Malice . . . can be shown by intentionally and unjustifiably delaying necessary medical attention for a child, as that delay may cause the child to suffer from cruel and excessive physical pain." (Punctuation and footnote omitted.) *Glenn v. State*, 278 Ga. 291, 293 (1) (a) (602 SE2d 577) (2004).

Here, Wells's conviction was based upon his acts of maliciously causing J. R. cruel and excessive physical pain when he failed to seek appropriate medical treatment for his burns. The trial evidence established that after J. R. sustained the second and third degree burns, Wells failed to seek immediate treatment for J. R. Wells also prevented J. R.'s mother from taking J. R. to the hospital for

treatment. Wells took J. R.'s mother's cell phone to prevent her from calling for help because he was afraid that he would go to jail and he did not want to get in trouble. The evidence also established that during the delay in which appropriate medical treatment was withheld, J. R. had difficulty eating and sleeping, became dehydrated, and developed an infection in the area of the burns. Based upon this evidence, Wells's conviction for cruelty to children in the first degree was authorized. See OCGA § 16-5-70 (b); *Williams v. State*, 285 Ga. App. 628, 629-630 (1) (647 SE2d 324) (2007); *Gore*, supra, 277 Ga. App. at 637 (1).

(b) *Cruelty to children in the second degree.* The indictment charged Wells with cruelty to children in the first degree for "causing [J. R.] to be burned." Wells ultimately was convicted of cruelty to children in the second degree, as a lesser included offense. "Any person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (c). Criminal negligence, an element of this offense, is "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." OCGA § 16-2-1 (b).

The evidence, as set forth above, authorized a finding that Wells had acted with the requisite criminal negligence in causing J. R. to sustain severe, painful burns to his body. Notwithstanding Wells's claim that the incident leading to J. R.'s injuries was merely accidental, the State's expert testified that J. R.'s burns were inconsistent with Wells's claim. The expert opined that the burns were consistent with an act of someone holding the left side of J. R.'s body into flowing hot water. The jury was authorized to reject Wells's claim and credit the expert's testimony in resolving the evidentiary conflicts and determining the question of fact. The jury's verdict finding Wells guilty of the second degree cruelty to children offense was supported by the trial evidence. OCGA § 16-5-70 (c). See, e.g., *Lee v. State*, 275 Ga. App. 93, 93-95 (619 SE2d 767) (2005).

(c) *Aggravated battery.* "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). The evidence was sufficient for the jury to determine that Wells had caused J. R. to sustain visible, severe burns and large hypertrophic scars on his skin, which required ongoing surgeries and corrective procedures. Since the evidence established that Wells had caused J. R.'s skin to be seriously disfigured, burned, and scarred, the aggravated battery conviction was authorized. See *Lee*, supra,

275 Ga. App. at 95.
    *Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED MAY 25, 2011.

*Edward V. C. Silverbach*, for appellant.
    *R. Javoyne Hicks White, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.