**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 12, 2012**

# In the Court of Appeals of Georgia

A12A0969. GASKINS v. THE STATE.                    DO-037 C

DOYLE, Presiding Judge.

Following a jury trial, Demetria Gaskins appeals her conviction of financial identity fraud and violation of oath of office, contending that the evidence was insufficient to support the verdict. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[1] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

support each fact necessary to make out the State's case, we must uphold the jury's verdict.[2]

So viewed, the record shows that Gaskins, a police officer, went to an Alltel Wireless retail store to open a new personal cell phone account. The Alltel representative ran a credit check and determined that Gaskins would be required to pay a deposit before opening the new lines. Instead of paying the deposit, Gaskins told the representative that she would return later with a tax identification number from her personal business so that she could open the account in the business's name. Thereafter, Gaskins returned to the store with a number written on a piece of paper, which she handed to the Alltel agent, explaining that it was her business's tax identification number. The Alltel agent was able to open the account without a deposit using the new number, and Gaskins received four new phone lines on the account.

Gaskins's new account eventually incurred more than $5,000 in charges, which Gaskins never paid. The number she gave to the Alltel agent was later discovered to be the social security number for a woman in Pennsylvania, who had never been to Georgia, had never met Gaskins, and had never given Gaskins permission to use her

---

[2] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

social security number in any way. The Pennsylvania woman notified Alltel and police in Georgia that her number had been used without her permission, and after an investigation, police confirmed that Gaskins had used the number.

Based on Gaskins's unauthorized use of the number, she was charged with theft of services (five counts), financial identity fraud (five counts), and violation of oath of office (one count). Following a jury trial, Gaskins was acquitted of the theft of services counts, but she was convicted on the remaining counts. Gaskins moved for a new trial, which motion the trial court denied, and this appeal followed.

1. Gaskins contends that the evidence was insufficient to support the verdict as to identity fraud because the State failed to prove the offense as defined by the statute and as alleged in the indictment. At the time in question,[3] OCGA § 16-9-121 (1) defined the offense as follows, in relevant part:

> A person commits the offense of identity fraud when without the authorization or permission of a person with the intent unlawfully to appropriate resources of . . . that person . . . to his or her own use . . . he or she: . . . *Obtains* or records identifying information of a person which

---

[3] The Code section was amended in 2007, which amendment applies to offenses occurring on or after May 24, 2007. See Ga. L. 2007, p. 450, § 7. The offenses in this case took place in March 2005, so we apply the version of the statute in effect at that time.

3

would assist in accessing the resources of that person or any other person. . . .[4]

Consistent with this, the indictment alleged that Gaskins "*did obtain* the social security number"[5] of another person and used it to open the account without permission.

(a) On appeal, Gaskins contends that the evidence failed to show "whether or how Gaskins 'obtained' the Pennsylvanian woman's social security number." Nevertheless, there was evidence that Gaskins, as a police officer, had access to a nationwide database that included people's personal information such as social security numbers. Further, there is uncontroverted evidence that Gaskins provided the written number to Alltel, so despite Gaskins's denial that she used the police database, she could not have provided it to Alltel without first obtaining it. The jury, as the finder of fact, was entitled to weigh the evidence and make credibility determinations as to any conflicts or inconsistencies. When an appellate court reviews the sufficiency of the evidence,

---

[4] (Emphasis supplied.) OCGA § 16-9-121 (2006).

[5] (Emphasis supplied.)

4

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[6]

Based on the record before us, and viewed under the proper light, we find no basis for reversal.

(b) Gaskins also argues that the evidence failed to exclude the reasonable alternative hypothesis that she provided what she thought was a taxpayer identification number for her business. She points to the circumstantial nature of the evidence as to precisely how she obtained the number, and argues that the evidence did not rule out the possibility that she lawfully obtained a number assigned to her business which happened to be identical to the Pennsylvania woman's social security number. She cites *Locklear v. State*, which articulates the rule as follows:

---

[6] (Emphasis in original; citation omitted.) *Jackson*, 443 U. S. at 319 (III) (B).

5

In a case entirely dependent on circumstantial evidence, . . . the State's evidence must both be consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis. . . . In making a determination of whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury. However, where there appears a hypothesis from the evidence, or from the lack of evidence and the defendant's statement, pointing to the innocence of the accused, and which tested by all human experience is a reasonable one, this Court may declare it so as a matter of law.[7]

Here, Gaskins ignores the fact that the evidence of her guilt was not entirely dependent on circumstantial evidence. There was direct, uncontroverted evidence that she supplied a social security number assigned to another person and represented it to be assigned to her business. By contrast, documents in evidence showed that each of her businesses were registered with the State under federal identification numbers that did not match the disputed social security number. When requested by her

---

[7] (Punctuation omitted.) *Locklear v. State*, 249 Ga. App. 104, 107 (1) (547 SE2d 764) (2001) (reversing theft conviction of couple who, along with others, were near stolen checks but were never otherwise linked to the checks, which were never recovered).

employer, Gaskins was unable to produce any corroborating documentation linking the disputed number to her businesses. Based on this record, the jury was authorized to disbelieve Gaskins's explanation and to conclude that she obtained the social security number fraudulently.[8]

2. Gaskins also contends that the evidence was insufficient to support her conviction for violating her oath of office because there was no connection between the offense and her public duties as a police officer. Her oath included the following language:

> I do solemnly swear (or affirm) that I will support and defend the Constitution of the State of Georgia, and I will faithfully perform and discharge the duties of my position, conscientiously and without malice or partiality, to the best of my ability;

> I further swear (or affirm) to obey, to adhere to, to uphold and to enforce the laws of the United States of America and of the State of Georgia at all times;

_____

[8] See *Walker v. State*, 281 Ga. App. 94, 97 (635 SE2d 577) (2006) ("Questions of reasonableness are generally decided by the jury, and this [C]ourt will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt unless the verdict is unsupportable as a matter of law.") (punctuation omitted); *Miller v. State*, 273 Ga. App. 761, 763 (1) (615 SE2d 843) (2005) (jury entitled to disbelieve defendant's testimony).

I further swear (or affirm) that I will bear true faith and allegiance to the Governor of the State of Georgia, the Chief of Police of the Albany Police Department, and the officers appointed over me according to law; so help me God.

OCGA § 16-10-1 provides as follows: "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years." Gaskins relies on *State v. Tullis*,[9] in which this Court reversed an officer's conviction for violating his oath of office by shoplifting a candy bar while on duty. This Court rejected the State's argument that "commission of a misdemeanor while on duty constitutes a violation of [the officer's] oath of office, because he implicitly swore to uphold the laws of the State of Georgia."[10] In so holding, the Court pointed out that "a police officer could be subject to a felony prosecution for failure to obey a traffic signal . . . or catching nine rainbow trout, one more than the creel limit."[11] Consistent with this, our cases addressing convictions under OCGA § 16-10-1 involve scenarios such as an on-duty officer threatening to arrest a 16-year-old girl in order to coerce

[9] 213 Ga. App. 581, 582 (445 SE2d 282) (1994).

[10] Id. at 582.

[11] (Citations omitted.) Id.

8

sex acts,[12] a correctional officer blackmailing an inmate,[13] or a correctional officer bringing a controlled substance into prison.[14]

Here, the unlawful conduct was not done as part of Gaskins's official duties. But the jury was authorized to find that she obtained the social security number without authorization by using a police database with personal information in it. This misuse of her access to sensitive information was an abuse of her position and is sufficient to support a finding that Gaskins violated her oath of office. Furthermore, "[a] crime involving dishonesty[, such as fraud,] is considered to be one involving moral turpitude."[15] Thus, by committing identity fraud, Gaskins committed a felony[16] demonstrating an inherent moral baseness, which a jury could conclude to be a violation of her oath to adhere to the laws she helped enforce. Accordingly, based on the facts in this case, this enumeration presents no basis for reversal.

---

[12] See *Wiggins v. State*, 272 Ga. App. 414, 418 (2) (612 SE2d 598) (2005), reversed in part on other grounds, *Wiggins v. State*, 280 Ga. 268 (626 SE2d 118) (2006).

[13] See *Beard v. State*, 300 Ga. App. 146, 149 (2) (684 SE2d 306) (2009).

[14] See *Bradley v. State*, 292 Ga. App. 737, 741 (2) (665 SE2d 428) (2008).

[15] *Urrutia v. Jewell*, 257 Ga. App. 869, 873 (1) (572 SE2d 405) (2002).

[16] See OCGA § 16-9-126 (a) (2006).

*Judgment affirmed. Andrews and Boggs, JJ., concur.*