## S07A0375. SAMPSON v. THE STATE.
### (646 SE2d 60)

HINES, Justice.

A jury found Willie M. Sampson guilty of malice murder and felony murder while in the commission of aggravated assault in connection with the fatal shooting of his former girlfriend, Peggy Scott. Sampson appeals, challenging the admission of what he characterizes as "bad character" evidence, certain comments by the State in closing argument, the charge to the jury on identity, and the effectiveness of his trial counsel. The challenges are without merit, but because of an irregularity in sentencing, we affirm in part and vacate in part.[1]

The evidence construed in favor of the verdicts showed that in the early morning hours of May 29, 1978, Peggy Scott and her long-time friend Marvin Marshall were sitting in Marshall's car outside Scott's apartment when Scott's ex-boyfriend, Sampson, drove up in his black Thunderbird. Scott commented, "That's Sampson." Sampson parked his car and exited carrying some unknown object in his hand. He walked into Scott's apartment where Scott's three young children were asleep in the living room, looked around, and then left the apartment and approached Marshall's car. Upon discovering Marshall and Scott together in the car, Sampson put a shotgun to Marshall's head and the two men exchanged words. Sampson then turned the shotgun on Scott and ordered her out of the car, but fired the weapon before she could do so, striking her in the neck. Scott died instantly. Sampson ran back to his car, threw the shotgun into the trunk, and sped off.

When the police arrived, Marshall identified Sampson as the shooter. Marshall had known Sampson for over a year, knew Scott and Sampson had recently broken up, knew the kind of car Sampson drove, and was able to provide police with Sampson's name and place

---

[1] The fatal shooting occurred on May 29, 1978. On December 10, 2002, a Muscogee County grand jury indicted Sampson for Count 1 – the malice murder of Scott; Count 2 – the felony murder of Scott while in the commission of aggravated assault; Count 3 – criminal damage to the property of Marvin Marshall in the first degree; Count 4 – possession of a firearm during the commission of the murder of Scott; and Count 5 – the aggravated assault of Marvin Marshall. A redacted indictment was filed charging Sampson with only Count 1 – the malice murder of Scott and Count 2 – the felony murder of Scott while in the commission of aggravated assault. Sampson was tried before a jury April 21-22, 2003, and found guilty of both malice murder and felony murder. On April 22, 2003, Sampson was sentenced to life in prison for malice murder and a concurrent term of life in prison for felony murder. Sampson filed a motion for new trial on May 22, 2003, and filed an amended motion for new trial on September 5, 2006. Following a hearing on September 8, 2006, the motion for new trial, as amended, was denied by two identical orders, one filed on September 19, 2006, and the other filed on October 8, 2006. A notice of appeal to the Court of Appeals was filed on October 4, 2006. The appeal was transferred to this Court on November 14, 2006, and the case was docketed in this Court on November 15, 2006. The appeal was submitted for decision on January 8, 2007.

of work. Despite a full-scale manhunt for Sampson, he remained at large for over 24 years until June 4, 2002, when a detective in the Columbus, Georgia, Police Department found a notation in the N.C.I.C. database that Sampson's F.B.I. file had been updated. He contacted the F.B.I. and learned that police officers in Columbus, Mississippi had "made contact" with Sampson who was then living there under the assumed name of William Jernigan. Shortly thereafter, Sampson was brought back to Georgia.

1. The evidence at trial was sufficient to enable a rational trier of fact to find Sampson guilty beyond a reasonable doubt of the crimes for which he was found guilty and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sampson contends that it was error to allow the State to elicit testimony from the detective who discovered his whereabouts to the effect that Sampson had been arrested and had a criminal history, including an F.B.I. file, because such evidence improperly placed his character in issue, thereby prejudicing him. However, Sampson failed to object to the evidence at trial; therefore, he has waived appellate review of the issue. *Castillo v. State*, 281 Ga. 579, 584 (6) (642 SE2d 8) (2007).

3. Sampson next contends that the State in closing argument was improperly permitted to violate the "golden rule" by commenting on his future dangerousness. But, Sampson did not voice such an objection to the cited statements. This failure to object at trial precludes this Court's consideration of the merits of the contentions regarding improper argument about future dangerousness because in the appeal of a non-death penalty murder case the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal. *Fulton v. State*, 278 Ga. 58, 62 (7) (597 SE2d 396) (2004). Nevertheless, the comments cited by Sampson do not improperly refer to his future dangerousness.[2]

4. Sampson further contends that in closing argument the State was erroneously allowed to comment on his failure to testify and to

---

[2] The cited comments largely addressed the importance of jury duty and the responsibility of jurors, mentioned the fact that approximately 25 years had passed since the murder during which time Sampson was living under an assumed name and "living a lie," and characterized Sampson's flight conduct as the actions of a guilty man. The prosecutor's closing argument did conclude with comments that a guilty verdict would "send a message" to Georgia citizens and warn "killers out there hiding among us," and that the jury should "[s]end a message to those out there like Willie Sampson that time will not be their salvation." There was no objection by Sampson; however, the trial court sua sponte rebuked the prosecutor and instructed the jury that it was sitting in judgment only of the crimes on trial, that the decision it would make regarding Sampson's guilt or innocence had nothing to do with anyone else who allegedly had committed a crime, that it was not sending a message to society, and that it was to base its decision solely on the evidence in this case.

assert that he had a burden to prove his innocence. But, this contention is likewise unavailing. Sampson failed to object to most of the comments he now cites as improper; therefore, he has waived his complaints regarding those comments. *Fulton v. State*, supra at 62 (7). Moreover, such statements were not, in fact, comments on Sampson's failure to testify.[3] As to statements by the prosecutor that Sampson had been given a preliminary hearing, and that there were different types of defenses, including "no defense, just nitpick," and the prosecutor's comments to the effect that Sampson was just "nitpicking" over the evidence, Sampson's attorney did object and the objections were sustained. Sampson did not pursue any further remedy. Indeed, when the prosecutor made an additional comment about "nitpicking" there was no objection from Sampson. Id.

As to any implication that Sampson had the burden of proof, the trial court properly charged the jury regarding the presumption of innocence, that the defendant had no duty to present any evidence of his innocence or that he had any burden of proof whatsoever, and that the burden never shifted to the defendant to introduce evidence or to prove his innocence. Qualified jurors are presumed to follow the instructions of the trial court. *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004).

Moreover, even if the cited portions of the closing argument had been improper, in light of the overwhelming evidence of Sampson's guilt and the high probability that the argument did not contribute to the jury's verdicts, any error would have to be deemed harmless. *Sterling v. State*, 267 Ga. 209, 212 (8) (477 SE2d 807) (1996).

5. Citing *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), Sampson asserts that the trial court committed reversible error by charging the jury that the level of certainty demonstrated by a witness in the identification of a defendant is a factor that it might consider in assessing the reliability of that witness. However, it appears from the transcript of the charge conference that Sampson requested that the trial court give such a charge; if so, he is precluded from challenging it as error. *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006). Moreover, after being asked by the trial court about objections to the jury instructions, Sampson's attorney responded that there were no objections, and counsel did not reserve the right to

---

[3] Sampson cites comments, inter alia, that the case was brought to superior court; that the trial was taking place because Sampson "insisted on a jury trial"; that Sampson was entitled to an attorney and the attorney was responsible to put forth any defense or challenge any evidence that he might wish to; and that in defense counsel's opening statement, the jury never heard, "He didn't do it." Such comments did not, as Sampson urges, clearly imply that Sampson had to testify, that he had the burden of proving his innocence, and that by not testifying, he did not meet that burden.

later challenge the charge. "The failure to reserve objections to the content of the jury instructions waives the right to assert the purported error on motion for new trial or on appeal." *Tillman v. Massey*, 281 Ga. 291, 292 (637 SE2d 720) (2006).

Even so, the eyewitness, Marshall, was acquainted with Sampson before the murder took place, and was immediately able to give the police a detailed description of Sampson. The eyewitness's prior knowledge of the perpetrator militates against a finding of harm from the giving of the "level of certainty" language. See *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005). Furthermore, the trial court instructed the jury about the State's burden of proving Sampson's identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations; therefore, it is highly probable that the jury charge on "level of certainty" did not contribute to the verdicts. *Woodruff v. State*, 281 Ga. 235, 236 (2) (637 SE2d 391) (2006).

6. Sampson contends that he was denied effective assistance of trial counsel because of counsel's failure to properly investigate and prepare for trial, to raise valid objections during the State's closing argument, and to reserve objections to the jury charge. However, Sampson's claims of insufficient investigation and trial preparation are merely general and bald assertions; Sampson cites no specific deficiencies, nor does he support the claims with argument or citation of authority, therefore they are abandoned. *Walker v. State*, 281 Ga. 157, 161-162 (7) (635 SE2d 740) (2006).

As to Sampson's remaining claims about the failures to object to portions of the State's closing argument and to reserve objections to the jury charge, the failure to make objections which will not succeed, see Divisions 3, 4, and 5, supra, cannot support a claim of ineffective assistance of counsel. *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001). This is so because in order to prevail on his claim of ineffective assistance of trial counsel, Sampson has to show that his attorney's performance was deficient, and that but for the deficiency, there is a reasonable probability that the result of his trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Warbington v. State*, 281 Ga. 464, 465 (2) (640 SE2d 11) (2007). This he has not done.

7. As stated in footnote 1, Sampson was sentenced to life in prison for malice murder and a concurrent term of life in prison for felony murder. It was error to sentence Sampson for the felony murder inasmuch as it stood vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 374 (4) (434 SE2d 479) (1993). Accordingly, Sampson's judgment of conviction and sentence as to the felony murder count must be vacated. Id. at 374 (6).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED JUNE 4, 2007.

*Bennett & Casto, Mark A. Casto,* for appellant.
*J. Gray Conger, District Attorney, Crawford L. Seals, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.