## S10A0177. HICKS v. THE STATE.
(695 SE2d 195)

THOMPSON, Justice.

Appellant Deanthony Rashawn Hicks was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the fatal shooting of Michael Howard.[1] He appeals from the denial of his motion for new trial, asserting that the evidence was insufficient to sustain his murder conviction, and that the trial court erred in refusing his requests to instruct the jury on justification by use of force in defense of others and voluntary manslaughter. For the reasons that follow, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that a group of friends had congregated at a cul-de-sac in a residential subdivision when, following an argument between the victim and Tierra Vinson, appellant appeared from a corner of the street wielding a pistol. He approached the victim pointing the pistol in his face. The unarmed victim swatted at the firearm and then attempted to run away. As the victim turned and ran, appellant shot

---

[1] The crimes were committed on September 10, 2006. Appellant was indicted by a Fulton County grand jury on December 22, 2006, on charges of malice murder, felony murder while in the commission of an aggravated assault, three counts of aggravated assault, and possession of a firearm during the commission of a felony. Trial commenced on October 8, 2007, and on October 12, 2007, a jury found appellant guilty of the charges, except for two counts of aggravated assault against Quatavius Berry. He was sentenced on October 23, 2009, to life in prison plus a consecutive five-year term of imprisonment on the firearm possession offense. The remaining counts were merged or vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Appellant filed a motion for new trial on October 18, 2007, which was amended on May 1, 2009 and again on July 7, 2009. The amended motion for new trial was denied on July 9, 2009. Appellant filed his notice of appeal on July 28, 2009. The case was docketed in this Court on October 6, 2009 and submitted for decision on the briefs.

him three times in the back, killing him. Appellant left the scene along with co-defendant Soupaisith Ratana in Ratana's vehicle.

Eyewitness Quatavius Berry could not identify appellant in a photographic lineup, but he did identify him as the shooter at trial. Witnesses Jamilah Hamilton and appellant's former girlfriend, Keosha Cox, were present at the time of the shooting and identified appellant from a photographic lineup. Both Hamilton and Cox told police that appellant was running behind the victim at the time of the shooting, and Cox said he was responsible for the murder. At trial, however, both witnesses recanted their previous statements: Hamilton denied seeing appellant run after the victim and Cox claimed that she was intoxicated at the time.

1. Appellant contends that the evidence was insufficient to support the murder conviction because Berry's identification of him as the shooter was not credible, and the only other evidence implicating him consisted of the recanted statements of Cox and Hamilton.

While Berry failed to identify appellant from a photographic lineup, he testified at trial that appellant was responsible for the shooting. In addition to witness testimony implicating appellant, police found bullets of the same caliber used to shoot the victim in co-defendant Ratana's vehicle soon after the shooting. The jury was also shown transcripts and video recordings of statements given to the police by both Cox and Hamilton, in which they implicated appellant. This evidence was ample for any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "[Appellant's] contention that the evidence was conflicting and that the witnesses who testified for the state were not credible does not change this result, as 'resolving evidence conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court.' " *Major v. State,* 280 Ga. 746, 747 (632 SE2d 661) (2006).

2. Appellant asserts as error the trial court's refusal to give his requested jury instruction on justification by use of force in defense of others.

Under OCGA § 16-3-21 (a), "a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." This is an affirmative defense.

> With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or

> mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent. All defenses which have been held to be statutory affirmative defenses meet this criteria; i.e., justification, self-defense or defense of others. . . . Each of these affirmative defenses requires that the defendant admit the crime before he can raise such defense.

*Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (2009). See also *Broussard v. State*, 276 Ga. 216 (2) (576 SE2d 883) (2003) ("[j]ustification is an affirmative defense whereby the defendant admits acting with the intent to inflict an injury, but claims that he did so while in reasonable fear of suffering immediate serious harm to himself or another"); *Brown v. State*, 267 Ga. 350 (2) (478 SE2d 129) (1996) (" '[a]n affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it' "); *Lightning v. State*, 297 Ga. App. 54 (5) (676 SE2d 780) (2009) (a defendant must admit the act or he is not entitled to a charge on justification).

During opening statement and in closing argument, appellant's counsel proffered the sole theory of the defense — that some other, unidentified person in the group at the cul-de-sac was the shooter and that appellant was the "convenient fall guy" who was wrongfully charged. The defense presented no evidence. Appellant asserts that his requested charge was authorized because the evidence established that the victim and Vinson had been arguing and it could be inferred that appellant intervened in Vinson's defense.

To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. *Davis v. State*, 269 Ga. 276 (3) (496 SE2d 699) (1998). "Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." Id. It is not error to refuse a justification charge where there is no evidence to support it. *Alexis v. State*, 273 Ga. 423 (4) (541 SE2d 636) (2001). Appellant points to no evidence that he entered the fracas in defense of Vinson. In addition, the undisputed evidence established that the unarmed victim was shot three times in the back as he was attempting to flee after appellant assaulted him with a firearm. We therefore conclude that appellant "could not have been in imminent fear at the time he committed the acts for which he was being tried." *Broussard*, supra at 217. Because "no construction of the evidence would support a finding that [appellant] shot in self-defense, the trial court properly refused to charge on that issue." Id. Compare *Williams v. State*, 209 Ga. App. 355 (1) (433 SE2d 361) (1993) (where defendant offered conflicting alternative evidence — first admitting to being involved in the altercation, and then denying

that she committed the crime — it was error to refuse to give a charge on justification).

3. Appellant also contends that the trial court erred in refusing to give his requested jury instruction on voluntary manslaughter as a lesser included crime of malice murder.

"Voluntary manslaughter is not a defense to murder, but it may be a lesser included offense of that crime." *Sparks v. State*, 277 Ga. 72, 73 (2) (586 SE2d 645) (2003).

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . .

OCGA § 16-5-2 (a); see also *Brennon v. State*, 253 Ga. 240, 241 (319 SE2d 841) (1984). Again appellant argues that the altercation between the victim and Vinson provided the "serious provocation" which caused appellant to act with "sudden, violent, and irresistible passion." But "[v]oluntary manslaughter presupposes an intentional killing, which was completely inconsistent with [appellant's] own version of the events." *Sparks*, supra at 74 (3). Even assuming that we ignore the fact that appellant maintained his noninvolvement in the crimes, we hold that a charge on voluntary manslaughter is precluded by the evidence. As noted previously, appellant assaulted the victim with a deadly weapon and then fired the fatal shots into his back as he attempted to flee.

> [F]ighting prior to a homicide "does not constitute the type of provocation that would warrant a charge of voluntary manslaughter." [Cit.] There being no evidence to illustrate the existence of provocation before the fatal shot[s] [were] fired, the trial court did not err by refusing to charge the jury on voluntary manslaughter.

*Nichols v. State*, 275 Ga. 246 (2) (563 SE2d 121) (2002). In addition, there is no evidence that appellant and Vinson had any type of relationship that would explain an impassioned attack by appellant. In fact, no one else in the cul-de-sac was particularly interested or surprised by the altercation between Vinson and the victim, which onlookers claimed was fairly routine. There is thus no evidence to show that appellant acted out of sudden, violent, and irresistible passion resulting from serious provocation. See *Worthem v. State*, 270 Ga. 469 (2) (509 SE2d 922) (1999) (where defendant initiated the

conflict by aggressively assaulting the victim with a deadly weapon, and other evidence does not show defendant acted out of sudden, violent and irresistible passion, a charge on voluntary manslaughter was properly refused). The trial court did not err in refusing to instruct the jury on voluntary manslaughter.

4. Finally, appellant contends that the trial court erred in instructing the jury that the "level of certainty shown by the witness" may be a factor in assessing the reliability of that witness' identification. However, in order to preserve the issue for appeal in this post-July 1, 2007 trial, appellant was required to "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." OCGA § 17-8-58 (a) (amended in 2007). Failure to do so "preclude[s] appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b). Our review of the record reveals that appellant failed to lodge a specific objection to the charge and assert the grounds for his objection. Accordingly, this claim was waived for purposes of appellate review. And where it is "highly probable that the jury charge on 'level of certainty' did not contribute to the verdict[ ]," *Sampson v. State*, 282 Ga. 82, 85 (5) (646 SE2d 60) (2007), the plain error exception does not apply. As in *Sampson*, there were identification witnesses in this case who were acquainted with appellant; in addition, the trial court instructed the jury on the State's burden of proving the identity of the perpetrator beyond a reasonable doubt. We thus find it highly probable that the charge in this case did not contribute to the verdict. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 19, 2010 —
RECONSIDERATION DENIED JUNE 7, 2010.

*Sheueli C. Wang*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, John O. Williams, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.