## S10A2004. BAPTISTE v. THE STATE.
(706 SE2d 442)

BENHAM, Justice.

Appellant Gerard George Baptiste was convicted in 2003 of the felony murder of Marcos Herrera, whose body was found alongside the body of Jose Perez Garcia in a Douglas County field on November 17, 2002.[1] On appeal, Baptiste questions the denial of his motion to suppress evidence gathered from his pickup truck and from a wiretap

---

[1] The crime took place November 16-17, 2002, and appellant was arrested on January 27, 2003. On February 14, 2003, the Douglas County grand jury returned a true bill of indictment charging appellant with two counts of malice murder, naming Herrera and Perez Garcia as the victims, and two counts of felony murder of the same victims, with aggravated assault serving as the underlying felony. Appellant's trial commenced on January 31, 2005, and concluded on February 14, 2005, with the jury's return of its guilty verdict on the felony murder charge concerning Herrera, and its report of its inability to reach a verdict on the remaining three charges. The sentence of life imprisonment imposed on appellant was filed on February 23,

on his telephone; the admission of a hearsay statement; and the inclusion in the jury charge of an instruction on party to a crime.

1. The medical examiner testified that Herrera died as a result of a gunshot fired into his head behind the left ear and an "immediately debilitating" gunshot wound to the back. The GBI firearms examiner testified that the bullets recovered from the heads of the two shooting victims were likely fired from a Davis derringer. Near the victims were tire tracks and a sales receipt from a store in Perry, Georgia, memorializing a transaction that had taken place about eleven hours before the bodies were discovered in Douglas County. Videotape of the store's parking lot showed the two victims exiting a red, extended-cab Chevrolet pickup truck with an unidentified black male who was wearing a striped toboggan hat, and the trio exiting the store and entering the pickup truck. Close in time to the store transactions, the girlfriend of victim Herrera received a telephone call from Herrera that was made from a cellular phone registered to appellant. Appellant was found to be the owner of a red, extended-cab Chevrolet pickup truck who, while wearing a striped toboggan hat, had visited businesses two days after the bodies were found in order to replace the truckbed liner and the truck's tires. The tire tracks found near the bodies matched tire tracks made by the tires on appellant's truck, and the seller of the new tires on the truck testified the new tires were the same tire brand and model as were the tires removed from the truck two days after the victims were found. Employees at the shop where the bedliner was replaced testified the old bedliner had an odor as if an animal had died and that they had scrubbed away a softball-sized stain on the truck's body underneath the bedliner. Blood found on wire covers near the tailgate of appellant's truck matched the DNA profile of Herrera. A pawn broker testified that, a month before the two men were killed, he had sold two Davis derringers to a man identified in the pawn broker's paperwork as appellant. A convicted felon testified that until his arrest in September 2002, he had purchased cocaine measured in kilograms several times from victim Herrera at appellant's house, and another convicted felon awaiting sentencing testified he had purchased kilograms of cocaine from appellant. Cocaine kilogram wrappers were found in a search of appellant's home. In an interview with police, appellant stated that he had been told that Herrera had stolen five kilograms of cocaine.

2005, and appellant filed a timely motion for new trial on March 4, 2005. Following the appointment of appellate counsel, the motion for new trial was amended on March 31, July 24, and August 25, 2009, and was denied on April 30, 2010. A notice of appeal was timely filed on May 21, 2010 and, upon receipt of the appellate record, the appeal was docketed in this Court to the September 2010 term of court. The appeal is submitted for decision on the briefs.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the felony murder of Herrera. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it denied his motion to suppress evidence obtained from searches of his home and his truck, and his motion to suppress intercepted communications made to and from telephone numbers assigned to appellant and his wife. Appellant asserts the State did not prove by competent evidence that the searches were conducted pursuant to valid search warrants which were issued based on a showing of probable cause.

*The truck and the residence.* Appellant focuses on the fact that the State did not produce at the suppression hearing the affidavits signed and sworn to by the investigator that he submitted to the Clayton County judge with his applications for search warrants for appellant's residence and truck. It is undisputed that the photocopies of each of the search warrants issued by the Clayton County judge contain the issuing judge's acknowledgment that the investigator made an affidavit before the issuing judge and that the affidavit was given under oath. Thus, there is no question that search warrants were issued based on affidavits signed and sworn to by the investigator before the issuing judge. See *Gray v. State*, 926 So2d 961, 975 (Miss. App. 2006) (record supports a finding that an affidavit was executed where original affidavit was lost, a copy was produced, the affiant testified he presented an affidavit to the judge who issued the search warrant, and the issuing court's order indicated an affidavit had been presented and used in determining that probable cause existed for the search). It is only the content of the affidavits submitted to the issuing judge that is at issue.

At the suppression hearing, the State presented photocopies of the Clayton County warrants issued and executed for appellant's residence and for the seizure of his pickup truck.[2] Attached to the photocopied search warrant for appellant's residence was a document identified by the Douglas County investigator as his unsigned affidavit that did not contain a completed jurat. The investigator testified that the original search warrants issued by the Clayton County judge and the officer's original signed and sworn affidavits were retained and sealed by the issuing judge who had been unsuccessful in locating the sealed packet. The investigator de-

---

[2] As a result of the Clayton County search warrant issued for the pickup truck, the truck was seized in Clayton County and taken to Douglas County where a Douglas County superior court judge issued a search warrant pursuant to which the seized truck was searched. At the motion to suppress hearing, the original of the Douglas County warrant was admitted into evidence, as was the investigator's signed affidavit with jurat.

scribed the unsigned, unsworn document presented at the suppression hearing as containing information identical to that contained in the affidavit he had executed before the issuing judge in order to obtain the warrant for appellant's truck and, with the deletion of the last 6 1/4 lines, was identical to the affidavit he had executed before the issuing judge to obtain the warrant for appellant's residence. The officer testified that, while in the presence of the assistant district attorney and a Douglas County detective, he had retrieved the unsigned, unsworn document from the hard drive of the sheriff's department computer on which he had created and stored the affidavit he had sworn and subscribed before the judge who issued the search warrant for the truck. Guided by Federal Rule of Evidence 1001 — that any printout of data stored on a computer and shown to reflect the data accurately is deemed an original document — and Georgia law allowing admission of a duplicate original as primary evidence without accounting for the original, the trial court denied the motion to suppress.

Georgia has not adopted a rule of evidence similar to the federal rule governing the admission of a computer printout, and the unsigned, unsworn document presented at the suppression hearing does not qualify as a "duplicate original" under Georgia law since it was not made by the same pen stroke at the same time (*Martin & Lanier Paint Co. v. Daniels*, 27 Ga. App. 302 (4) (108 SE 246) (1921)), or was not a copy executed at the same time as the "original" of the document. See *Raulerson v. Jones*, 122 Ga. App. 440 (1) (177 SE2d 181) (1970). Nonetheless, the trial court did not err when it denied the motion to suppress.

"The best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for." OCGA § 24-5-4 (a). The statute

> makes the best evidence rule inapplicable whenever the absence of the original writing is "satisfactorily accounted for." OCGA § 24-5-21 provides that "[i]f a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence. The question of diligence is one for the sound discretion of the court." This rule applies both to secondary documentary evidence and to parol testimony.

*McGee v. State*, 260 Ga. 178 (3) (b) (391 SE2d 400) (1990). In light of the officer's testimony concerning the loss of the sealed packet containing the original search warrants and affidavits, the trial court did not abuse its discretion when it admitted secondary evidence, i.e., the testimony of the investigator as to the contents of the missing affidavits. *Summerour v. State*, 211 Ga. App. 65 (1) (438 SE2d 176)

(1993) (admission of secondary parol evidence concerning the contents of a missing document was not an abuse of discretion). See *State v. C. B. D.*, 2009 WL 3255173 (Ala. Crim. App. 2009) (secondary evidence admissible to show the existence and contents of affidavit and search warrant once it has been established to the reasonable satisfaction of the trial judge that the documents were lost absent bad faith on the part of the proponent). See also *State v. Reese*, 991 A2d 806 (Me. 2010) (search warrant is not invalidated due to lost affidavit when the existence and contents of the pertinent language of the affidavit can be proved in a manner sufficient to permit meaningful review, i.e., that there is proof that the issuing judge reviewed the affidavit and the request for the warrant simultaneously and proof that there were grounds for a finding of probable cause); *People v. Galland*, 45 Cal. 4th 354 (197 P3d 736, 746-747) (Cal. 2008) (the absence of an affidavit to support an executed search warrant does not invalidate the warrant when other evidence may be presented to establish that an affidavit was presented and the contents of that affidavit).

*The telephone calls.* With regard to the investigative warrants issued to intercept telephone calls made to and received by four telephone numbers assigned to appellant and his wife, appellant erroneously contends that the original search warrant and affidavit were not produced at the suppression hearing. The transcript of the hearing establishes clearly that the originals were unsealed during the suppression hearing and were identified by the investigator who executed the affidavit and who received the investigative warrant from the issuing judge.

3. Appellant next takes issue with the admission of hearsay testimony elicited by the assistant district attorney in his re-direct examination of a special agent of the United States Drug Enforcement Administration, concerning the agent's knowledge of statements made by a non-testifying confidential informant to state law-enforcement personnel investigating the homicides of the victims. The agent testified that the informant told investigators that victim Herrera, at the time he was killed, was scheduled to deliver cocaine to a black man who sold cars and that Herrera had used the cocaine recipient's phone to call his girlfriend. When defense counsel objected to the hearsay testimony, the trial court allowed it on the ground that defense counsel had elicited similar hearsay testimony on his cross-examination of the DEA special agent with regard to statements made by the absent informant to state law-enforcement investigators. After the trial court ruled, defense counsel said, "Okay." Defense counsel's acquiescence in the trial court's ruling deprives appellant of the ability to complain about the ruling on appeal. *Spencer v. State*, 287 Ga. 434 (2) (c) (696 SE2d 617) (2010).

Cf. *Velazquez v. State*, 282 Ga. 871 (5) (655 SE2d 806) (2008) (implying that defense counsel's reply of "okay" to a ruling constituted acquiescence).

4. Lastly, appellant contends the trial court erred when it granted the State's request to instruct the jury on the law of party to a crime. In the charge conference, defense counsel objected to an instruction on party to a crime on the ground that there were no co-defendants, indicted or unnamed, and no separate act committed by a co-defendant. After the jury instruction was given, defense counsel reserved its objections to the charge. On appeal, appellant contends it was improper to give the jury instruction because it was not supported by the evidence since the State did not present evidence that appellant acted in concert with any other person(s) to assist or facilitate the commission of the crimes.

The State asserts the claim of error has not been preserved for appeal because appellant asserts before this Court a different rationale concerning the jury charge than appellant asserted before the trial court during the charge conference. At the time of appellant's 2005 trial, the statutory requirement that a party object prior to the jury's return of its verdict to the giving or the failure to give a jury instruction and to state the grounds of objection was not applicable to criminal cases. OCGA § 5-5-24 (a).[3] A criminal defendant's reservation of objections to the jury charge at trial authorized the defendant to raise on appeal the propriety of the inclusion of a jury instruction (*Gaither v. State*, 234 Ga. 465 (2) (216 SE2d 324) (1975)), unless the defendant had requested the charge be given (*Sampson v. State*, 282 Ga. 82 (5) (646 SE2d 60) (2007)), or had expressly acquiesced to the giving of the instruction now contested. See *McNeil v. State*, 284 Ga. 586 (3) (669 SE2d 111) (2008). Taking into consideration the timing of appellant's trial, his claim of error is preserved for appellate review since defense counsel reserved objection to the jury charge, the instruction at issue was not requested by appellant, and appellant did not expressly acquiesce to the charge being given.

A trial court is authorized to give a requested jury instruction if there was produced at trial slight evidence supporting the theory of the jury charge. *Hicks v. State*, 287 Ga. 260 (2) (695 SE2d 195)

---

[3] The law with respect to the preservation of error with regard to jury instructions in criminal cases changed with the enactment of OCGA § 17-8-58, effective July 1, 2007. OCGA § 17-8-58 (a) now requires a criminal defendant to inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate, and OCGA § 17-8-58 (b) precludes appellate review where there is a "[f]ailure to object in accordance with subsection (a) . . . unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties."

(2010). In addition to the evidence summarized in Division 1, supra, linking appellant to the commission of the crimes for which he was convicted, there was evidence from the expert firearms examiner concerning the amount of time it would take for one person to shoot and re-load the two-shot derringer believed to be the murder weapon in order to fire six shots into the two victims; there was evidence that a confidential informant had told authorities that two shooters killed the victims; and appellant testified that a drug dealer named Vincent knew about the drug transaction between appellant and victim Herrera, that appellant had loaned his truck to Vincent and had sold his Davis derringers to Vincent prior to the murder of the victims. The trial court did not err in giving a charge on party to a crime since the charge given was legally correct and was supported by evidence presented at trial. We disagree with appellant's premise that whether there is any evidence to support the giving of a jury charge is dependent upon which party offered the evidence that authorizes the giving of the charge. See *Taylor v. State*, 287 Ga. 440 (4) (696 SE2d 652) (2010) (the trial court was authorized to give a jury instruction on alibi where two witnesses called by the State provided the defendant with an alibi defense — one on direct examination and one on cross-examination).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2011.

*J. Scott Key*, for appellant.

*David McDade, District Attorney, James A. Dooley, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.