In the Supreme Court of Georgia

Decided:  October 6, 2014

S14A0749.  PRINCE v. THE STATE.

NAHMIAS, Justice.

Appellant Geoffrey Prince was convicted of the murder of Vanessa Adolph.  On appeal, he contends that his trial counsel was ineffective in failing to file a motion to suppress the evidence found during the initial search of his house and in failing to object with specificity to the trial court's refusal to charge the jury on the defense of alibi, and that the trial court improperly denied his counsel's motion for mistrial based on the prosecutor's discovery violation. We affirm.[1]

  1. Viewed in the light most favorable to the verdict, the evidence

_____

[1] Adolph was killed on the night of December 16-17, 2003.  On March 23, 2004, a grand jury in Richmond County indicted Appellant for malice murder and felony murder.  After a trial from March 21 to 23, 2005, the jury found Appellant guilty of both charges.  The felony murder verdict was vacated by operation of law, and the trial court sentenced Appellant to life in prison for malice murder.  On March 24, 2005, he filed a motion for new trial; after much delay, Appellant was appointed new counsel, who amended the motion on December 5, 2010.  The trial court held hearings on the motion on December 16, 2010, and April 14, 2011, and denied the motion on June 12, 2013.  Appellant was then appointed new appellate counsel, who filed a timely notice of appeal. The case was docketed in this Court for the April 2014 Term and submitted for decision on the briefs.

presented at trial showed the following. Around 1:30 a.m. on December 17, 2003, three witnesses saw a white minivan parked by the woods near the Martin Marietta plant in Augusta, Georgia. Vanessa Adolph's body was discovered in the same area later that day. An autopsy showed that she had suffered a number of traumatic injuries including abrasions, a fractured sternum, lung punctures, rib fractures, and hemorrhaging; the cause of death was blunt force injuries and possible strangulation.

Ruth Ferebee was Appellant's girlfriend. A number of items were found close to Adolph's body, including Ferebee's library card and keys to her white minivan and her office. After seeing her picture on television and learning that the police wanted her for questioning, Ferebee spoke with Appellant, and they decided to drive to Jacksonville, Florida, where her family lived, leaving on the evening of December 19. Appellant changed her minivan's license plate so they would not be stopped by the police. The next day, Investigator Scott Peebles spoke with Ferebee on the phone. Ferebee told him that she had been staying at Appellant's house in Martinez (a suburb of Augusta) on the night of December 16-17 and that she had loaned her minivan to Appellant that evening so he could go shopping. Investigator Peebles then obtained a search warrant

for Appellant's house, and when the search was conducted on December 23, officers found men's pants covered in blood, which DNA testing showed came from Adolph.

On December 24, Appellant and Ferebee surrendered themselves to law enforcement in Augusta. Two days later, Appellant asked to speak with an investigator. After waiving his Miranda rights, Appellant gave an audiotaped statement to Investigator Peebles in which he said the following. On the night of December 16, he was driving a minivan and picked up Adolph and a man named James Blount at a gas station to give them a ride to a truck stop in exchange for payment. However, Appellant missed the turn into the truck stop and instead pulled into the Martin Marietta plant. As he was turning the minivan around, Blount and Adolph gave each other a signal and both attacked him. Appellant fought them off, body slamming Blount and kicking Adolph in the face. During this struggle, the minivan's key ring came apart and lost several keys. Appellant got Adolph and Blount out of the car and drove away; they were lying on the ground arguing as he left.

Blount had been booked into the Richmond County Jail on unrelated charges the day after Appellant. Investigators determined that Blount could not

have been present at the time of Adolph's murder because he was an inpatient at Georgia Regional Hospital from December 13 to December 18.

On December 30, Investigator Tim Owen asked Appellant for consent to conduct a second search of his house to find the license plate to the minivan; the plate had not been found during the initial search, and the investigators had learned that it was hidden between the mattresses in the bedroom. Appellant granted the consent. According to Owen, without any questioning, Appellant then repeated the essence of what he had told Investigator Peebles about the night of the murder.

Ferebee entered a negotiated guilty plea to hindering the apprehension of a criminal and was sentenced to five years on probation. At trial, she testified for the State as follows. On December 16, 2003, she returned from work to Appellant's house at about 6:00 p.m. At that time, Appellant asked for the keys to her white minivan. Ferebee had her two minivan keys on a shower curtain hook that also contained her library card and office key. Appellant left in her minivan, returning home between 11:30 p.m. and midnight. His behavior when he got home was unusual, as he went straight to the bathroom, washed up, changed his clothes, and went to bed without speaking. Ferebee fell asleep

4

within 30 to 40 minutes after Appellant returned and did not wake up until the morning, when he was again gone. Later that morning, Appellant returned the shower hook to Ferebee with only one minivan key, saying he misplaced the other keys at his son's house.

Appellant did not testify at trial. His defense remained that he left Adolph alive with Blount at the Martin Marietta plant. When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009). ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant claims that his constitutional right to the effective assistance of counsel at trial was violated. To prevail on this claim, Appellant must show both that his trial counsel provided deficient performance and that, but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S.

5

668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." Crowder v. State, 295 Ga. 167, 169 (751 SE2d 334) (2013). Accordingly, Appellant must show that his counsel performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms. See Strickland, 466 U.S. at 687-688.

(a) Appellant contends first that his trial counsel was ineffective in failing to file a motion to suppress the evidence – in particular, the bloody men's pants bearing the victim's blood – that was collected in the initial search of his home, because there was no record of a signed search warrant affidavit and because the search warrant was not supported by probable cause. "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, [Appellant] must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." Richardson v. State, 276 Ga. 548, 553 (580 SE2d 224) (2003). Appellant has failed to make this showing.

Appellant is correct that the record does not contain a signed copy of the affidavit that Investigator Peebles presented to the judge in applying for the

6

search warrant, and because "the [attesting] officer's signature determines the validity of the affidavit and the search warrant, its absence cannot be considered a mere technical irregularity." State v. Barnett, 136 Ga. App. 122, 123 (220 SE2d 730) (1975). The lack of a signed affidavit in the record, however, does not necessarily result in the granting of a motion to suppress the warrant. In Baptiste v. State, 288 Ga. 653 (706 SE2d 442) (2011), this Court affirmed the denial of a suppression motion because, although the State could not produce the signed affidavits, the search warrants in question contained the issuing judge's acknowledgment that the law enforcement officer made an affidavit before the judge and that the affidavits were given under oath. See id. at 655. We relied on secondary documentary evidence (copies of the affidavits) and the testimony of the officer to establish the contents of the missing original affidavits. See id. at 655-656. See also former OCGA § 24-5-21 ("[I]f a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence.").[2]

---

[2] In the new Georgia Evidence Code, which applies to hearings and trials held after January 1, 2013, OCGA § 24-5-21 has been replaced by OCGA § 24-10-1004, which says generally that if the original copy of a writing has been lost or destroyed, "the original shall not be required and other evidence of the contents of a writing . . . shall be admissible."

At the motion for new trial hearing in this case, Investigator Peebles authenticated an unsigned copy of the affidavit that he presented to the judge in order to obtain the search warrant for Appellant's house and testified that he specifically remembered being sworn in by the judge, signing the original affidavit while in the judge's presence, and seeing the judge sign the original affidavit. Furthermore, the top of the search warrant, which was signed by the judge, states that the attesting officer made the affidavit before the judge. This evidence clearly supports a finding that the affidavit was in fact properly signed, and the trial court accordingly denied Appellant's motion for new trial on this ground. Because Appellant cannot make a strong showing that a motion to suppress based on this argument would have been granted, this ineffective assistance of counsel claim fails. See Richardson, 276 Ga. at 553.

As for Appellant's claim that his trial counsel should have asserted that the affidavit did not establish probable cause:

> "The magistrate's task in determining if probable cause exists to issue a search warrant is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' Our duty in reviewing the magistrate's

8

decisions in this case is to determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a 'finding of probable cause is entitled to substantial deference by a reviewing court.'" . . . Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

Sullivan v. State, 284 Ga. 358, 361 (667 SE2d 32) (2008) (citations omitted).

In this case, probable cause to search Appellant's house for evidence related to Adolph's murder was appropriately established by the information presented in the affidavit that Adolph had been found beaten to death; that items belonging to Ferebee were found near Adolph's body; that witnesses placed a white minivan matching the description of Ferebee's minivan near the crime scene a few hours before the body was discovered; that upon learning that investigators wanted to question her, Ferebee and Appellant went to Florida; and that Ferebee told the investigator that she was at Appellant's house on the night of the murder and had let Appellant use her van to go shopping that evening. Accordingly, a motion to suppress the search warrant based on lack of probable cause would have failed, and this ineffective assistance of counsel claim also fails. See Richardson, 276 Ga. at 553.

(b) At trial, Appellant's counsel requested a jury charge on the

9

defense of alibi, but the trial court declined to give the instruction on the ground that Appellant had not given the State notice of an alibi defense. Because the State had not requested alibi notice in writing, Appellant was not actually required to provide notice, see OCGA § 17-16-5 (a), but his counsel made only a general objection to the court's ruling rather than objecting on that specific ground. Appellant now contends that his trial counsel was ineffective in failing to object with specificity to the refusal to give an alibi instruction. However, Appellant did not preserve this ineffective assistance claim for review on appeal because he did not raise it in his amended motion for new trial, which was filed after he obtained new counsel, nor did he raise it at the hearing on that motion or obtain a ruling on it from the trial court. See Jones v. State, 294 Ga. 501, 503 (755 SE2d 131) (2014). See also Ruiz v. State, 286 Ga. 146, 148 (686 SE2d 253) (2009) ("To preserve the issue of ineffective assistance of previous counsel, new counsel must raise the issue at the earliest practicable opportunity of post-conviction review or the issue is waived."). [3]

---

[3] Appellant raised the failure of his alibi defense as an ineffective assistance claim in his amended motion for new trial, but only in terms of his trial counsel being deficient in failing to notify the State of his intention to offer an alibi defense and in failing to properly plan the alibi defense, not in failing to object to the trial court's refusal to charge on the alibi defense.

10

Even if the issue had been preserved for review, however, Appellant's claim would not succeed, because he cannot demonstrate that he was prejudiced by the trial court's failure to give an instruction on the alibi defense. The evidence presented at trial regarding Appellant's whereabouts did not actually provide him a good alibi for the crime. Appellant admitted being at the crime scene with the victim on the night she was murdered, and the testimony from Ferebee only put him at his house for 30 to 40 minutes after 11:30 p.m. to midnight, which left him ample time to kill the victim that night and also did not put him at home when the white minivan, like the one he had borrowed from Ferebee, was seen near the crime scene a few miles from his house at about 1:30 a.m. Accordingly, even assuming that Appellant's trial counsel was deficient as now alleged, there is not a reasonable probability that the outcome of the trial would have changed in Appellant's favor if the jury had been charged on the defense of alibi. See White v. State, 293 Ga. 825, 827 (750 SE2d 165) (2013) (holding that, even assuming that appellant's trial counsel was deficient in failing to provide notice of an alibi defense, appellant could not show prejudice where the purported alibi testimony "showed there was a window of time on the night of the murder for which appellant's whereabouts could not be verified

11

without contradiction"); <u>Smiley v. State</u>, 288 Ga. 635, 637 (706 SE2d 425) (2011) (holding that trial counsel's error with regard to presenting an alibi defense was not prejudicial where the purported alibi witness could not account for all of the time at issue).

3.      Finally, Appellant contends that the trial court improperly denied his motion for mistrial based on the prosecutor's misconduct.  Under OCGA § 17-16-4 (a) (1), the prosecuting attorney must disclose to the defendant, normally no later than ten days before trial, "the substance of any . . . relevant written or oral statement made by the defendant while in custody, whether or not in response to interrogation."  The prosecutor here violated that obligation by not disclosing the statement Appellant made to Investigator Owen until eliciting testimony about it from Owen at trial; the volunteered statement had not been recorded or included in Owen's notes on the case.  However, a trial court may grant a mistrial for such a discovery violation only upon a showing by the defendant of both bad faith and prejudice or that a mistrial would otherwise be just under the circumstances.  See OCGA § 17-16-6[4]; <u>Tubbs v. State</u>, 276 Ga.

_____

[4] OCGA § 17-16-6 says in relevant part:

If at any time during the course of the proceedings it is brought to the attention of the court

12

751, 753 (583 SE2d 853) (2003); <u>Gore v. State</u>, 277 Ga. App. 635, 640 (627 SE2d 198) (2006).  Even assuming arguendo that the prosecutor here evidenced bad faith by asking Investigator Owen about Appellant's statement knowing that Appellant had not been given proper notice, there was no prejudice or other imperative to grant a mistrial.

The undisclosed statement that Appellant made to Investigator Owen was the same in substance as Appellant's longer, more detailed, and audio-recorded statement to Investigator Peebles, which was properly disclosed to Appellant and was played for the jury at trial.  Indeed, in requesting a mistrial, trial counsel made no suggestion as to what testimony he might have elicited from Investigator Owen on cross-examination had he known about Appellant's spontaneous statement earlier, and at the motion for new trial hearing, trial counsel admitted that Owen's testimony did not provide any information from Appellant that had not already been disclosed in discovery.  Appellant's brief to this court similarly offers no indication that the discovery violation caused

that the state has failed to comply with the requirements of this [discovery] article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

13

him prejudice.  We therefore see no abuse of discretion in the trial court's denial of the motion for mistrial.  See <u>Gore</u>, 277 Ga. App. at 640.

Judgment affirmed.  All the Justices concur.