303 Ga. 104
FINAL COPY

S17A1585. LEEKS v. THE STATE.

PETERSON, Justice.

David Leeks appeals his convictions for malice murder and other charges

stemming from the robbery and fatal shooting of a Fulton County convenience

store clerk, Zerit Haileslasie.[1] Leeks argues that his convictions should be

reversed because the trial court committed plain error in charging the jury (1)

on the concept of party to a crime and (2) that the jury may consider an

identification witness's level of certainty in assessing the reliability of the

identification. We conclude that the trial court committed no error in charging

---

[1] Haileslasie was fatally shot on December 19, 2006. Leeks was indicted on March 16, 2007, on charges of malice murder, felony murder, armed robbery, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The charge of felon in possession of a firearm was dead-docketed, and a jury found Leeks guilty of the other charges at a July 2007 trial. Merging the aggravated assault count into the armed robbery conviction, and purporting to merge the felony murder count into malice murder, the trial court sentenced Leeks to life for malice murder, twenty years consecutive for armed robbery, and five years consecutive for possession of a firearm during the commission of a felony. New counsel filed a motion for new trial, which the trial court (not the judge who presided over the trial) denied on October 3, 2014. Leeks filed a timely notice of appeal, and this case was docketed to this Court's August 2017 term and submitted for a decision on the briefs.

the jury on party to a crime and that the trial court's error in charging the jury on how to consider an identification witness's testimony did not affect the outcome of the trial, and we affirm Leek's convictions.

Taken in the light most favorable to the verdict, the evidence presented at trial showed that Leeks's mother and co-indictee, Regina Roberts, did various chores for the owner of the convenience store and was permitted to stay in a small storage room on the property. Another co-indictee, Ricky Moore, worked at the store cleaning and stocking shelves. On the day of the shooting, Leeks separately met up with Roberts and Moore in the store parking lot; Leeks asked Roberts how many people would be in the store, and she told him there would be two. Leeks came into the store that night and argued with Haileslasie, who told Leeks he could not loiter inside the store.

Leeks then entered the booth where Haileslasie was working and fatally shot Haileslasie. Roberts and Moore entered the booth; Haileslasie was slumped over a chair and Leeks was gathering money. Roberts and Leeks fled in the same direction. Moore was standing outside the store when police arrived.

Police initially suspected that a man named Octavia Smith was the shooter, as at least one officer thought that a person seen on store surveillance

video looked like Smith. Police showed a lineup with Smith's photo to two store patrons, Mildred Stephens and Bryan Howse, as well as Moore, and both Howse and Moore picked out Smith.[2] But Smith was in the Fulton County jail on the night of the shooting.

Stephens and Howse identified Leeks in subsequent photo lineups and in court as the man they saw in the store. Specifically, Stephens said Leeks came into the store and sat next to her while she played a game. She testified that she had an opportunity to see Leeks's face because the store was well lit, he sat close to her, and she turned to greet him. She said Leeks argued with Haileslasie, then went around her and into the booth, at which point she heard "pow-pow" twice and ducked behind a rack of potato chips. Howse said he saw Leeks come into the store, heard Leeks arguing with Haileslasie, followed by gunshots, and then saw Leeks leave the store. Howse testified that he had an opportunity to look at Leeks and that the store lighting was bright.

Roberts was evasive when questioned by police but suggested to police

---

[2] An investigating officer testified that Howse reported that the picture of Smith that he was shown "resembled" the shooter. Howse testified at trial that he told police he "was not 100 percent sure" of that identification because the picture quality was poor but the picture of Smith resembled the shooter more than the other five photos he was shown in the lineup.

that her son was the shooter. At trial, Roberts testified that she did not see the shooting but saw Leeks in the booth after Haileslasie was shot, picking up money. Cell phone tower data indicated that the phone Leeks had when he was arrested was in the area of the store at the time of the shooting, then traveled toward his home in Adairsville.

The defense strategy at trial was to call into question the identity of the shooter. Leeks, who told police he was home sick on the night of the murder, did not testify at trial. But the defense pointed out that Moore and a police officer picked out Smith as the shooter, and Howse initially pointed to Smith's picture, as well. The defense argued that Stephens's and Howse's identifications of Leeks were tainted because the witnesses first were shown a picture of Smith, who looks like Leeks. The defense contended that Roberts lied in implicating her son in the crime in order to avoid a lengthier prison sentence.

1. Although Leeks does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Leeks was guilty of the crimes for which he

4

was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Leeks argues that the trial court erred by charging the jury on the concept of party to a crime, improperly permitting the jury to convict him of murder in a manner that was neither charged in the indictment nor relied upon by the State as its theory of the case at trial. The trial court did not err in this regard.

The trial court charged the jury as follows:

> Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that the person was a party to it, even though the person alleged to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, is not amenable to justice, or has been acquitted.

Leeks argues that the trial court impermissibly expanded the allegations in the indictment by instructing the jury on party to a crime. But we have held repeatedly — and reiterated recently — that an indictment need not charge a defendant under a party to a crime theory in order for the defendant's culpability to be proven in that manner. See Lebis v. State, 302 Ga. 750, 759 (II) (B) n. 3 (808 SE2d 724) (2017); Butler v. State, 273 Ga. 380, 384 (9) (541 SE2d 653)

5

(2001); State v. Johnson, 269 Ga. 370, 372 (3) (499 SE2d 56) (1998). The trial court did not impermissibly expand the theory of liability contained in the indictment.

Leeks also argues that the instruction was improper because the State did not rely upon a party to a crime theory in presenting its case to the jury. It is true that the defense was one of mistaken identity, and the State maintained that Leeks was the shooter.[3] But Leeks cites no authority for the notion that a trial court may instruct on only the particular theories of liability on which the prosecution relied at trial. Indeed, trial courts regularly instruct on lesser included offenses and may do so without either party requesting such an instruction. See State v. Stonaker, 236 Ga. 1, 2 (222 SE2d 354) (1976). "A trial court is authorized to give a requested jury instruction if there was produced at trial slight evidence supporting the theory of the jury charge." Baptiste v. State, 288 Ga. 653, 658 (4) (706 SE2d 442) (2011).

Here, there was at least slight evidence supporting a theory that Leeks was guilty of murder under a party to a crime theory. Leeks was indicted with

---

[3] It appears that the State purported to request the instruction at issue to explain why others also were prosecuted, even though they were not the shooter, and the trial court appeared to view the instruction as germane in that respect.

6

Roberts and Moore. No witnesses testified that they actually saw him shoot Haileslasie, but there was testimony that he discussed the possibility of robbing the store with Roberts and Moore, as well as testimony that he gathered money from Haileslasie's booth after the shooting and fled with Roberts. The party to a crime instruction was not erroneous under the evidence. See Lebis, 302 Ga. at __ (II) (B) ("Whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." (citation and punctuation omitted)); State v. Jackson, 294 Ga. 9, 11-12 (748 SE2d 902) (2013) (sufficient evidence to find the defendant guilty of murder as a party to a crime where evidence showed defendant had a dispute with the victim and had another person drive him to confront the victim, brought the gun used to kill the victim and pistol-whipped him, made a statement approving of the shooting, and left the victim for dead in fleeing); Harrell v. State, 253 Ga. 474, 474-475 (1) (321 SE2d 739) (1984) (evidence sufficient to convict the defendant of murder under a party to a crime theory where she was overheard on the night of the murder telling someone that the victim would be in the paper the next day, arranged the victim's meeting with the triggerman, was present when the victim was shot, helped move the victim's body and

7

search his pockets, and reported she would receive money for her part).

3.   Leeks also argues that the trial court committed plain error by instructing the jury that it could consider an identification witness's level of certainty in evaluating the reliability of the identification. We find that the trial court's error in this regard was harmless.

Here, the trial court instructed that the level of certainty shown by a witness about the witness's identification of an alleged perpetrator was among the factors that the jury might consider in assessing the reliability of the witness's identification. Defense counsel did not object at that time or at the conclusion of the charge. Where a party fails to object to a jury charge, we review the issue for plain error pursuant to OCGA § 17-8-58 (b).[4] There are four prongs in the test for plain error.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are

---

[4] Leeks's trial began on July 16, 2007, after the July 1, 2007 effective date of OCGA § 17-8-58 (b). See Ga. L. 2007, p. 595, § 5.

satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations, punctuation and emphasis omitted).

The State does not dispute that the trial court committed a clear or obvious error. Indeed, two years before the trial court instructed the jury in Leeks's case that it might consider an identification witness's level of certainty, this Court disapproved the pattern instruction containing this language. See Brodes v. State, 279 Ga. 435, 442 (614 SE2d 766) (2005). Instead, the State argues that any error was harmless and therefore not plain error. We agree.

Errors in jury instructions under Brodes may be harmless in the light of the evidence presented and the jury instruction as a whole. See Hicks v. State, 287 Ga. 260, 264 (4) (695 SE2d 195) (2010) (no plain error in level of certainty charge where the evidence included identification witnesses acquainted with the defendant, and the trial court instructed the jury on the State's burden of proving the identity of the perpetrator beyond a reasonable doubt); Woodruff v. State, 281 Ga. 235, 235-236 (2) (637 SE2d 391) (2006) (Brodes error harmless where

9

eyewitness knew the defendant and viewed his crimes in daylight, there was significant corroborating evidence including other witnesses, and the trial court instructed the jury on the State's burden of proving perpetrator's identity beyond a reasonable doubt and the possibility of mistaken identification).

Here, there is no indication in the record that two witnesses who identified Leeks as the perpetrator — Stephens and Howse — had met Leeks prior to the night of the crime, but both indicated they were able to see Leeks's face in the well-lit store. Morever, there was other significant evidence corroborating those identifications. Roberts — a co-defendant but also Leeks's own mother — suggested to police that her son was the shooter and testified at trial that she saw Leeks picking up money in the booth after Haileslasie was shot. The identification testimony also was corroborated by cell phone data showing that the phone Leeks had on his person when he was arrested was in the area of the store at the time of the shooting. That evidence was particularly detrimental to the defense given that Leeks had told police he was home sick the night of the murder.[5] In addition, the trial court instructed the jury that the State had to prove

_____

[5] In detailing the evidence against Leeks, the State refers to store surveillance video of the incident. The transcript indicates such a video was admitted into evidence at trial. But no copy of the video was included in the record transmitted to this Court. After this Court

10

the identity of the perpetrator beyond a reasonable doubt. Given all of these factors, Leeks cannot demonstrate that the outcome of his trial would have been different absent the level of certainty instruction. We thus conclude that any error in giving the instruction was harmless and therefore not plain error.[6]

Judgment affirmed. All the Justices concur.

---

ordered the clerk of the Superior Court of Fulton County to supplement the record with the video by a certain date or certify that it could not be located, a chief deputy clerk of that office submitted an affidavit essentially saying that efforts to locate the exhibit by her office and the district attorney's office thus far had been unsuccessful. Leeks does not rely on the video in his brief on appeal, and review of the video is not necessary to reach the conclusion that we reach.

[6] Although he asserts no claim of ineffective assistance of counsel in his enumerations of error, Leeks urges us to consider an alternative argument that even if the instructions he complains about on appeal are not plain error, his convictions nonetheless should be reversed because trial counsel provided ineffective assistance by failing to object to the charges. But our conclusion that the level of certainty instruction was harmless renders meritless an ineffectiveness claim based on failure to object to that instruction. See Martin v. State, 298 Ga. 259, 277 (6) (c) (779 SE2d 342) (2015) ("Th[e] test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions."). And any claim that trial counsel was ineffective for failing to object to the party to a crime charge is foreclosed by our determination that the trial court did not err in giving this instruction. See Ventura v. State, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) ("The failure to pursue a futile objection does not amount to ineffective assistance.").

11

Decided February 19, 2018.

Murder. Fulton Superior Court. Before Judge Glanville.

Genevieve Holmes, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc. A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.